59 F.3d 327
 33 Collier Bankr.Cas.2d 1174, Bankr. L. Rep. P 76,540
In re PRUDENTIAL LINES, INC., Debtor.
Lee DICOLA, Trustee of the PLI Disbursement Trust, Plaintiff-Appellee,
Asbestosis Claimants Represented by Maritime Asbestosis
Legal Clinic, Intervenor-Plaintiff-Appellee,
v.
AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY
ASSOCIATION, INC., Defendant-Appellant.
 No. 1581, Docket 94-5065.
 United States Court of Appeals,
Second Circuit.
 Argued May 3, 1995.
Decided June 26, 1995.
 
 Richard H. Brown, Jr., New York City (Victor P. Corso, Salvatore A. Santoro, Kirlin, Campbell & Keating, Franklin B. Velie, Christy & Viener, of counsel), for defendant-appellant.
 Leonard C. Jaques, Detroit, MI (Alan Kellman, Maritime Asbestosis Legal Clinic, Div. of the Jaques Admiralty Law Firm, P.C., of counsel), for plaintiff-appellee and intervenor-plaintiff-appellee.
 Before: OAKES, MINER, and JACOBS, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Defendant-appellant American Steamship Owners Mutual Protection & Indemnity Association, Inc. ("American Club") is a mutual insurance corporation that provides protection and indemnity ("P & I") insurance to its shipowner members. American Club underwrote P & I policies for ships belonging to Prudential Lines, Inc. ("PLI") on an annual basis from 1940 through 1970 and from 1975 through early 1986. PLI obtained Chapter 11 bankruptcy relief in November of 1986.
 
 
 2
 The Maritime Asbestosis Legal Clinic ("MALC") represents over 5,000 claimants ("the Claimants") who allege that they were injured by exposure to asbestos while serving aboard PLI ships. Each of the claimants served on a PLI vessel during one or more of the years when PLI was covered by American Club P & I policies. For the most part, each claimant also had been exposed to asbestos while serving aboard the vessels of other shipowners.
 
 
 3
 Pursuant to the Chapter 11 bankruptcy plan ("the Plan"), a PLI Disbursement Trust ("the Trust") was established to resolve asbestos-related claims and to enforce the Trust's interests under PLI's insurance policies. On December 14, 1990, the PLI Disbursement Trustee ("the Trustee") commenced an adversary proceeding in the bankruptcy court against American Club, seeking a declaratory judgment to determine the Trustee's rights under the American Club P & I policies issued to PLI. The Claimants, represented by MALC, were granted leave to intervene in that proceeding.
 
 
 4
 In December of 1992, on cross-motions for summary judgment, the bankruptcy court issued various rulings relating to the rights of the parties under the policies and entered a final judgment on January 20, 1993. See In re Prudential Lines, Inc., 148 B.R. 730 (Bankr.S.D.N.Y.1992). American Club appealed this judgment, along with an earlier order of the bankruptcy court declaring the adversary proceeding to be a "core" proceeding, to the district court.
 
 
 5
 Several months later, the Trustee and MALC entered into a settlement agreement that specified certain fixed amounts to be paid to the Claimants for certain named categories of diseases and established a procedure by which the Trustee would pay the claims. The bankruptcy court "so ordered" the agreement on March 9, 1993. However, American Club did not receive notice of the settlement until it received the Trustee's initial claims thereunder. The Trustee initially sought payment in an amount exceeding $13 million. In an order dated August 4, 1993, the bankruptcy court directed American Club to pay these claims. On September 2, 1993, the bankruptcy court ordered the Trustee to allow American Club discovery with respect to the reasonableness of the settlement with the Claimants. On September 21, 1993, the bankruptcy court entered a judgment requiring American Club to pay a total of $66,160,000 in claims. These orders were appealed to the district court and consolidated with the prior appeal pending in the district court.
 
 
 6
 The district court decided American Club's consolidated appeal on July 29, 1994. See In re Prudential Lines, Inc., 170 B.R. 222 (S.D.N.Y.1994). The district court's comprehensive opinion and order addressed seven major issues and resolved them as follows:
 
 
 7
 (1) The district court agreed with the bankruptcy court that the Trustee's adversarial proceeding against American Club was a "core" proceeding.
 
 
 8
 (2) The district court concluded that the Trustee was entitled to reimbursement for all damages caused by a claimant's exposure to asbestos under a single ship's annual P & I policy, regardless of whether the claimant served on other asbestos-contaminated vessels within the policy year or whether the claimant served on the same ship over a number of different policy years. The bankruptcy court had reached the same result.
 
 
 9
 (3) Disagreeing with the bankruptcy court, the district court found that the term "occurrence" in the policies' deductible clause was ambiguous. The district court therefore remanded for the bankruptcy court to take extrinsic evidence on the meaning of this term.
 
 
 10
 (4) The district court rejected the Liman recycling scheme incorporated in the settlement between the Trustee and MALC and "so ordered" by the bankruptcy court.[1] A Liman-like scheme was adopted because the P & I policies contained a "pay first" provision that required the insured to pay a claimant before the insurer's duty to indemnify arose, and the bankrupt PLI had no funds with which to do so. The district court held that this arrangement did not trigger the policies' "pay first" provisions.
 
 
 11
 (5) Rejecting American Club's argument, the district court affirmed the bankruptcy court's determination that American Club was not entitled to post-petition interest on money owed to it by PLI for unpaid premiums and assessments for certain years.
 
 
 12
 (6) The district court concluded that the bankruptcy court had jurisdiction to issue the August 4th order directing the insurer to comply with the settlement agreement between the Trustee and MALC and to render the judgment ordering American Club to reimburse the Trustee for $66 million in claims.
 
 
 13
 (7) The final issue addressed on appeal was whether the procedures by which the money judgment was rendered against American Club provided it with due process. The district court found that, although American Club had no right to approve the settlement entered into by the Trustee, it did have the right to discovery to determine whether the settlement was reasonable before its duty to indemnify arose.
 
 
 14
 In a hearing held on November 29, 1994, the bankruptcy court overturned the March 9th stipulation and settlement between the Trustee and MALC. The bankruptcy court concluded that, in light of the district court's rejection of the Liman recycling scheme incorporated therein, the Claimants could not be paid and the settlement therefore was not in their best interests.
 
 
 15
 On appeal, American Club raises three challenges to the determinations made in the bankruptcy and district courts. American Club argues that: (1) its liability to indemnify PLI should be allocated pro rata over the policies covering the PLI ships on which a claimant served, according to the seaman's sea service and exposure; (2) it should be entitled, for each seaman's claim, to one deductible for each policy year that the claimant served aboard an American Club-insured PLI vessel; and (3) it is entitled to post-petition interest on unpaid past-due premiums and assessments.
 
 
 16
 Although neither side raised the issue of our authority to decide this appeal, "we are duty bound to examine this issue sua sponte." In re Chateaugay Corp., 838 F.2d 59, 61 (2d Cir.1988). Title 28, Section 158(d) provides that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees" rendered by the district courts in connection with bankruptcy appeals. "By its terms, therefore, Sec. 158(d) confers appellate jurisdiction only over a district court order that is 'final.' " In re Fugazy Express, Inc., 982 F.2d 769, 775 (2d Cir.1992). In contrast, the district court has jurisdiction to hear appeals from non-final bankruptcy orders, provided that such appeals are taken "with leave of" the district court. 28 U.S.C. Sec. 158(a).
 
 
 17
 Although section 158(d) limits our jurisdiction to final orders, a more flexible standard of finality has emerged in the context of bankruptcy proceedings. This is appropriate "[b]ecause bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings." In re Chateaugay Corp., 880 F.2d 1509, 1511 (2d Cir.1989). We therefore "allow for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." In re Sonnax Indus., Inc., 907 F.2d 1280, 1283 (2d Cir.1990) (internal quotation omitted). However, "[b]y 'disputes' we do not mean merely competing contentions with respect to separable issues; rather, we apply the same standards of finality that we apply to an appeal under 28 U.S.C. Sec. 1291." Fugazy, 982 F.2d at 775.
 
 
 18
 We recently summarized this standard in In re Integrated Resources, Inc., 3 F.3d 49, 53 (2d Cir.1993):
 
 
 19
 Given the strong federal policy against piecemeal appeals, a "dispute," for appealability purposes in the bankruptcy context, means at least an entire claim on which relief may be granted. Thus, with respect to a meritorious claim for damages, the dispute is not completely resolved until the bankruptcy court determines the amount of damages to be awarded.
 
 
 20
 In sum, for a bankruptcy court order to be final within the meaning of Sec. 158(d), the order need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief. (first emphasis added, internal quotations and citations omitted).
 
 
 21
 Moreover, even in cases where the underlying bankruptcy court decision is final and appealable, "the district court's disposition [may] independently render[ ] the matter nonappealable." Bowers v. Connecticut Nat'l Bank, 847 F.2d 1019, 1022 (2d Cir.1988). This court has adopted "the prevailing view that courts of appeals lack jurisdiction over appeals from orders of district courts remanding for significant further proceedings in bankruptcy courts." Id. at 1023 (internal quotation omitted). This approach is designed to "reconcile[ ] the 'flexible' view of finality in bankruptcy with the concerns of avoiding piecemeal appeals and conserving judicial resources." Id.; see also Chateaugay, 838 F.2d at 61 ("[I]f a district judge remands a case for further proceedings, and the remand order is appealable, an appeal would delay the bankruptcy court's proceedings; if the proceedings envisioned by the district court's remand are allowed to go forward without the interruption of an appeal to this court, then, depending on the outcome, no further appeals may be necessary.").
 
 
 22
 Applying these principles, we conclude that this court lacks jurisdiction to hear American Club's appeal. Even if we assume that the bankruptcy court's order resolved a discrete dispute with sufficient finality, the district court's disposition of the appeal rendered the bankruptcy court's decision non-final. While the district court affirmed much of the bankruptcy court's judgment, it remanded the case to the bankruptcy court for the court to take extrinsic evidence on the meaning of the term "occurrence" in the P & I policies' deductible clause.[2] On this appeal, American Club seeks to challenge the lower courts' interpretation of the term "[c]laims hereunder," which also appears in the deductible clause. Even taking into account the more liberal rules of finality applied in the bankruptcy context, such an appeal clearly is premature. Indeed, depending on the extrinsic evidence adduced by American Club on remand, the proceedings in the bankruptcy court may render moot American Club's appeal on this point and ultimately engender an appeal, on different grounds, by MALC.
 
 
 23
 Although the district court simply affirmed the judgment of the bankruptcy court with respect to the other two issues that American Club seeks to appeal--whether losses should be allocated pro rata over consecutive policies and whether American Club is entitled to post-petition interest--we conclude that the district court's remand order with respect to the deductible clause also renders these matters nonappealable. American Club cannot separate out discrete claims made within the adversary proceeding and appeal the lower courts' resolution of these issues piecemeal. As we have noted, "[t]he disposition of a discrete dispute is generally considered to be the resolution of an adversary proceeding within the bankruptcy action." In re Chateaugay Corp., 922 F.2d 86, 90 (2d Cir.1990).
 
 
 24
 In the context of an adversary proceeding brought to obtain a declaratory judgment, resolution of the "discrete dispute" requires a final determination of the actual controversies between the parties that are the subject of the adversary proceeding. Such an approach is consistent with our long-standing policy of limiting piecemeal appeals, even in the bankruptcy context. See Bowers, 847 F.2d at 1024 ("[E]ach [bankruptcy] petition already has the potential to generate multiple properly appealable orders."). We therefore conclude that the order of the district court that American Club seeks to appeal from is not yet final,[3] and therefore it is not appealable under 28 U.S.C. Sec. 158(d).
 
 
 25
 As a related matter, we address the pending motion of appellee MALC, which requests permission to bring an interlocutory appeal, pursuant to 28 U.S.C. Sec. 1292(b), from that portion of the district court's order ruling that Liman recycling would not satisfy the P & I policies' "pay first" provision. Section 1292(b) provides this court with the discretionary authority to review an interlocutory order if the district court issues an order certifying that the appeal "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal ... may materially advance the ultimate termination of the litigation." Judge Haight certified the Liman recycling issue for immediate appeal on February 15, 1995.
 
 
 26
 Although section 1292(b) grants us the discretionary authority to hear MALC's interlocutory appeal, see Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 251-54, 112 S.Ct. 1146, 1148-50, 117 L.Ed.2d 391 (1992), we conclude that MALC has failed to meet its "burden of persuading the court ... that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment," Coopers & Lybrand v. Livesay, 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978) (internal quotation omitted). As discussed above, this court presently lacks jurisdiction to hear American Club's appeal. We believe that it would be more efficient to hear MALC's appeal concurrently with American Club's wider-ranging appeal, as both appeals require construction of the American Club P & I policies. Such review can be had when a final judgment is rendered. Accordingly, we deny MALC's motion for permission to appeal.
 
 
 27
 For the foregoing reasons, American Club's appeal is dismissed for lack of appellate jurisdiction, and MALC's motion for permission to appeal is denied.
 
 
 
 [1]
 Pursuant to this scheme, the Trustee would pay the first claim in cash, and the claimant immediately would loan the money back to the bankrupt estate through a non-recourse loan. The initial sum then would be used to compensate a second claimant, and so on, finally ending up back in the Trustee's account. See Liman v. American S.S. Owners Mut. Protection & Indem. Ass'n., 299 F.Supp. 106 (S.D.N.Y.), aff'd, 417 F.2d 627 (2d Cir.1969) (per curiam), cert. denied, 397 U.S. 936, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970)
 
 
 [2]
 The clause provided: "Claims hereunder ... are subject to a deduction of $___ with respect to each accident or occurrence." (emphasis added)
 
 
 [3]
 We reject American Club's suggestion that the order of the district court be deemed "final" under the collateral-order doctrine announced in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1948). The "small category" of orders reviewable under Cohen "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." Swint v. Chambers County Comm'n, --- U.S. ----, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); see Cohen, 337 U.S. at 546, 69 S.Ct. at 1225-26. The latter two requirements of the collateral-order doctrine clearly are not satisfied in this case, since the order of the district court is a decision on the merits of the case, and that order can be reviewed after a final judgment ultimately is rendered