**In re PRUDENTIAL LINES, INC., Debtor.**

**Lee J. DiCOLA, Trustee of the PLI Disbursement Trust, Plaintiff,**

v.

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., Defendant.**

**Bankruptcy No. 86–11773 AJG.**
**Adv. No. 90–6830A.**

United States Bankruptcy Court,
S.D. New York.

Nov. 5, 1996.

Franklin B. Velie, Salvatore A. Santoro, Christy & Viener, New York City, and Richard H. Brown, Jr., Kirlin, Campbell & Keating, New York City, for American Steamship Owners Mutual Protection and Indemnity Association, Inc.

Alan Kellman, The Maritime Asbestosis Legal Clinic, A Division of the Jaques Admiralty Law Firm, Detroit, MI, for plaintiffs-intervenors Asbestosis Claimants.

Harold D. Jones, Pryor, Cashman, Sherman & Flynn, New York City, for Lee J. DiCola, Trustee of the PLI Disbursement Trust.

## MEMORANDUM DECISION ON REMAND TO DETERMINE THE APPLICATION OF DEDUCTIBLES TO ASBESTOSIS CLAIMS

ARTHUR J. GONZALEZ, Bankruptcy Judge.

The instant controversy requires the Court to determine the number of deductibles the defendant insurance company may apply before indemnifying its insured for the thousands of claims filed as a result of claimants' exposure to asbestos while working aboard the insured's marine vessels. The issues discussed below were remanded by the district court for this Court's consideration of extrinsic evidence to interpret the terms of the deductible provisions contained in the insurance policies. The Court has reviewed the evidence presented and renders this memorandum decision consistent with the direction provided by the district court in its memorandum opinion and order.

### BACKGROUND

Debtor Prudential Lines, Inc., including its predecessor corporations Grace Lines, Inc., Prudential-Grace Lines, Inc. and Prudential Steamship Company (collectively, "PLI"), was a United States cargo shipping company incorporated under Delaware law with its principal place of business in New York. During the 1940's, 1950's, 1960's, 1970's, and 1980's, PLI employed seamen who were exposed to asbestos aboard PLI's vessels. Thousands of those seamen claim to have developed some manifestation of asbestotic disease from the regular inhalation of asbestos fibers during their PLI employment.

American Steamship Owners Mutual Indemnity Association, Inc. ("American Club"), a nonprofit mutual insurance association, was PLI's primary insurer. American Club issued PLI protection and indemnity ("P & I") policies for every year from 1940 through early 1986, excepting the four years from 1971 through 1974.

All of the P & I policies issued to PLI by American Club were substantively similar to each other, aside from their deductible and policy limit amounts. Deductibles in the 1940's and 1950's ranged between $500 and $1,000 per accident or occurrence. Deductibles rose in the 1960's to between $2,500 and $10,000, in the 1970's to $25,000 and $50,000, and reached $100,000 at their highest. The policy limits during the 1940's were about $2,000,000. In the 1950's they ranged from $3,000,000 to $5,000,000, in the 1960's and 1970's from $5,000,000 to $10,000,000, and in the 1980's reached $100,000,000.

On November 4, 1986, PLI filed its consent to Chapter 11 relief in response to an involuntary petition filed in this Court by its creditors.[1] On October 4, 1990, Judge Howard C. Buschman confirmed the Second Amended Joint Plan of Reorganization, as Modified (the "Plan"). Among its provisions, the Plan provided for the creation of the PLI Disbursement Trust (the "Trust"). The Trust, which is governed by both the terms of the Plan and the PLI Disbursement Trust Agreement (the "Trust Agreement"), was established primarily for liquidating the multitudinous asbestos-related personal injury claims against PLI. The Trust Agreement designated Lee J. DiCola as the PLI Disbursement Trustee (the "Trustee").

When the Trust was established, the amount of cash assets earmarked for the liquidation of asbestosis claims was minimal. However, the Trust succeeded in interest to the numerous P & I policies issued to PLI by American Club. The Plan provided that the Trustee would utilize these policies to liquidate claims. The Plan directed the Trust to file a declaratory action to determine the Trust's rights under the policies. The Trustee commenced the present adversary proceeding against American Club on December 14, 1990, in this Court.

Asbestosis claimants, represented by the Maritime Asbestosis Legal Clinic ("MALC"),

---

1. PLI's involuntary petition was not filed by asbestosis claimants.

were granted leave on February 26, 1991, to intervene in the adversary proceeding as a party in interest. MALC currently represents approximately 8,000 seamen who were employed by PLI during the years in which the P & I policies were in effect and who have filed over 10,000 proofs of claim for injuries resulting from asbestos exposure.

On November 20 and 21, 1991, MALC and American Club filed cross motions for summary judgment. Judge Francis G. Conrad, sitting in this Court, partially granted both motions on December 10, 1992. *Dicola v. American Steamship Owners Mutual Indemnity Association, Inc. (In re Prudential Lines, Inc.)*, 148 B.R. 730 (Bankr.S.D.N.Y. 1992). Following that decision, the Trustee entered into a stipulation and agreement with MALC providing for the settlement of claims which was approved by Judge Conrad on March 9, 1993. On September 21, 1993, Judge Conrad entered the First Partial Judgment, submitted by MALC, which required payment of $66,160,000 by American Club pursuant to the stipulation and agreement.

American Club appealed Judge Conrad's decision and judgment to the District Court for the Southern District of New York. On review, Judge Charles S. Haight, on July 29, 1994, partially affirmed and partially reversed Judge Conrad's decision, vacated the First Partial Judgment, and remanded the case to this Court for further proceedings regarding the policies' deductible provisions. *Dicola v. American Steamship Owners Mutual Indemnity Association, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222 (S.D.N.Y. 1994).

American Club appealed Judge Haight's decision, and MALC sought permission to bring an interlocutory appeal of Judge Haight's ruling. On June 26, 1995, the Second Circuit Court of Appeals, in *Dicola v. American Steamship Owners Mutual Indemnity Association, Inc. (In re Prudential Lines, Inc.)*, 59 F.3d 327 (2d Cir.1995), dismissed American Club's appeal. Judge Roger J. Miner, writing for the court, found that the district court's remand rendered this Court's original ruling non-final and therefore removed the circuit court's appellate jurisdiction. Judge Miner also rejected MALC's request, stating that although the circuit court could consider MALC's interlocutory appeal, it would be more efficient to consider it in conjunction with American Club's appeal following the remand.

## DISCUSSION

The issues before the Court have arisen because of the ambiguous language contained in the policy provisions governing the number of deductibles that American Club may apply to PLI's requests for the indemnification of asbestosis claims. The resolution of this disagreement will have a significant impact on the asbestosis claimants' recovery. If American Club's construction of the deductible provision is utilized, there are potentially tens of thousands of deductibles which could be applied. MALC's construction would limit the deductibles to a few dozen.

The district court's remand directed this Court to consider "extrinsic evidence relating to the parties' course of dealing with respect to applying deductibles to claims arising from exposure to asbestos." *Prudential Lines*, 170 B.R. at 239. At issue are the deductible provisions in the P & I policies which are all identical and provide:

1) . . . .

. . . .

(e) Claims hereunder, other than for burial expenses, are subject to a deduction of $____ with respect to each accident or occurrence.

There are two issues of construction within this provision which could impact upon how many deductibles American Club may apply: (1) the definition of "[c]laims hereunder" and (2) the definition of "occurrence".

### I. *"Claims Hereunder"*

■ The interpretation given the phrase "[c]laims hereunder" affects the number of deductibles that American Club may apply to the indemnification of the asbestosis claims. If "[c]laims hereunder" is construed as meaning each claim hereunder, then the provision would require that each claim filed was subject to a deduction, and might be subject to more than one based on the remaining portion of the provision. However, if the phrase

is construed as meaning all claims hereunder, then it merely introduces the provision, noting that all claims filed are subject to deductibles generally, but leaves the number of deductibles applied to be wholly determined by the remaining portion of the provision. The latter construction would, therefore, permit the application of a single deductible to multiple claims while the former would not.

Both this Court and the district court construed the phrase "[c]laims hereunder" to mean all claims hereunder. This Court concluded that "[t]he words 'claims hereunder' merely mean that the deductible applies to claims filed under that P & I policy" generally, not to each and every claim filed under that P & I policy separately. *Prudential Lines,* 148 B.R. at 746. The district court affirmed that part of this Court's holding, noting that "Judge Conrad correctly concluded that the phrase '[c]laims hereunder' in the context of the deductible provision is unambiguous" and "is not the axis on which the deductible application turns.... Rather ... it serves as an introductory phrase not directly linked to the application of deductibles." *Prudential Lines,* 170 B.R. at 236–37.

American Club is seeking to have this Court revisit the "[c]laims hereunder" issue on two grounds: (1) the district court's remand was broad enough to encompass its reconsideration; and (2) the circuit court's observation that "the proceedings in the bankruptcy court may render moot American Club's appeal [on the '[c]laims hereunder' issue]" necessarily contemplates this Court's reconsideration of the entire deductible issue on remand including the interpretation of "[c]laims hereunder." *Prudential Lines,* 59 F.3d at 332.

American Club's argument fails on both points. First, the district court explicitly held that "the phrase ['[c]laims hereunder'] is not reasonably susceptible of more than one interpretation, it is not ambiguous, and its clear meaning must be enforced." *Prudential Lines,* 170 B.R. at 237. Even if the district court's remand were implicitly broad enough to include reconsideration of "[c]laims hereunder," this Court would still be bound by the district court's explicit holding that

"[c]laims hereunder" is not reasonably susceptible of more than one interpretation. Furthermore, this Court is unwilling to read the district court's remand as encompassing reconsideration of the "[c]laims hereunder" issue since it was definitively resolved based on the district court's own finding that there is no ambiguity in the terms.

Second, the circuit court's decision is fully consistent with a narrow reading of the district court's remand excluding the "[c]laims hereunder" issue. American Club argued that when the circuit court noted that the remand might moot its "[c]laims hereunder" appeal, the court anticipated that the remand was broad enough to include a reconsideration of the "[c]laims hereunder" issue. American Club asserts that would be the only way its "[c]laims hereunder" appeal would be mooted. However, a narrow interpretation of the term "occurrence," which, as described below, would result in at least one deductible per claim, could also moot the "[c]laims hereunder" appeal. If, for example, the Court finds that the term "occurrence" referred to each seaman's exposure during a particular policy period, American Club could apply at least one deductible to each claim. Since the construction of "[c]laims hereunder" most favorable to American Club would not permit it more than one deductible per claim, American Club's appeal on the "[c]laims hereunder" issue would thus be mooted without any reconsideration of "[c]laims hereunder" itself. Assumably, the circuit court recognized this possibility. American Club's contention that the circuit court must have been contemplating a remand which included the reconsideration of the terms "[c]laims hereunder" strays from a reasonable reading of the circuit court's decision. If American Club desires to pursue its "[c]laims hereunder" argument, it must do so on appeal.

II. *"Occurrence"*

■ The deductible provision provides that claims are "subject to a deduction ... with respect to each accident or occurrence." Since, neither "accident" nor "occurrence" is defined in the P & I policies, courts interpreting the provision are limited to the

meanings offered by the parties, as demonstrated by their dealings, or the meanings required by law. In this case, the parties have offered two competing interpretations of "occurrence" which could be utilized in asbestosis claims. The first, supported by American Club, would find the "occurrence" to be each individual seaman's exposure to asbestos over the course of one policy period. The second, supported by MALC, would find the "occurrence" to be the general presence of asbestos on PLI vessels.

These two interpretations would have significantly different effects on the number of deductibles that could be applied to asbestosis claims. American Club's construction would allow deductibles to be applied to each seaman's claim for each year the seaman was employed on PLI vessels[2]—most claims would therefore be subject to multiple deductibles. MALC's construction would only allow one deductible to be applied for each policy year, regardless of the number of claims—most claims would therefore be subject to pro rata portions of deductibles. Since the deductibles range as high as $100,000 and the claimants number in the thousands, whether the claimants are required to each absorb multiple deductibles or are permitted to apportion a few deductibles amongst all of them will be a substantial factor in the amount of their recoveries.

This Court, in its original decision, concurred with MALC that the "occurrence" was the general presence of asbestos on the PLI ships. In reaching that conclusion, this Court found "the deductible clause unambiguous and plain on its face," and therefore declined to consider whether the practices between American Club and PLI militated for a different construction. *Prudential Lines,* 148 B.R. at 746. The district court reversed this Court's finding, holding that the term "occurrence" was ambiguous, that this Court should have considered the par-

ties' practices, and remanded the case for the consideration of whether such extrinsic evidence resolves the ambiguity in the term.

The district court further indicated that this Court on remand was to consider only evidence which could reflect American Club and PLI's practice of applying deductibles in past asbestosis claims. The court accepted that there may have been sufficient evidence offered to establish it was American Club's policy to apply one deductible to each injured seamen but found that this did not definitively establish the meaning the parties attached to the term "occurrence" because it

> fails to sufficiently detail the *parties' practice,* as distinguished from American Club's *policy,* in applying deductibles. I do not read the relevant cases as permitting a court, in discerning the parties' intent, to give conclusive weight to evidence of only one party's interpretation of the contract, established years after the parties entered into the contract, without evidence that the other party concurred in that interpretation.

*Id.* at 239.

The district court's instructions are consistent with New York case law regarding ambiguity in contracts. The New York Court of Appeals, in examining the definition of "occurrence" in a similarly ambiguous insurance provision, provided that

> Evidence of practical construction may only be referenced where the policy provisions are ambiguous. If ambiguity exists, "[t]o show a practical construction ... there must have been conduct by the one party expressly or inferentially claiming as of right under the doubtful provision, coupled with knowledge thereof and acquiescence therein, express or implied, by the other."

---

**2.** This Court held that the unambiguous terms of the American Club policies required the use of an "injury-in-fact" trigger for policy coverage. *Prudential Lines,* 148 B.R. at 740–43. This holding was not appealed and thus not considered by the district court. An injury-in-fact trigger requires that a seaman be exposed to asbestos during a particular policy period for that policy to be triggered. Since for insurance considerations, working on an asbestos-containing vessel constitutes being exposed to asbestos, the injury-in-fact trigger results in the triggering of every policy where the seaman worked on an insured's asbestos-containing vessel during that policy's period. Thus, practically speaking, American Club policies were triggered for each year in which a seaman was employed on a PLI vessel.

*Continental Casualty Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 651, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993) (citations omitted) (quoting *Niagara Falls Int'l Bridge Co. v. Grand Trunk Railway Co.*, 212 A.D. 705, 710, 209 N.Y.S. 79 (1925)). *See also State v. Home Indemnity Co.*, 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969, 486 N.E.2d 827 (1985) ("If . . . the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact.").

Thus, the district court's decision directs that this Court limit the scope of its consideration on remand to evidence of practices between American Club and PLI which could establish that PLI concurred with American Club in the meaning it attached to "occurrence" in the deductible provision. Therefore, this Court must consider extrinsic evidence to determine (1) whether American Club's practices establish the meaning it attached to the term "occurrence" as it applies to asbestosis claims and (2) whether PLI's practices demonstrate that it either concurred with or acquiesced to American Club's meaning.

Both American Club and MALC were provided the opportunity to present evidence relating to American Club and PLI's practice of applying deductibles to asbestos claims. American Club presented two witnesses and nine exhibits and MALC presented no witnesses and one exhibit. American Club's first witness was Thomas J. McGowan, secretary to the American Club Board of Directors and president of the Shipowners Claims Bureau, the organization which manages the daily operations of American Club. The second witness, William A. Craig, Jr., is senior vice-president of the Shipowners Claims Bureau. The exhibits included, inter alia, minutes of the American Club Board of Directors' meetings, worksheets used by American Club to evaluate different ways of indemnifying asbestosis claims, and background materials on the settlement of three asbestosis cases by shipping companies insured by American Club.

The preponderance of the proffered evidence does demonstrate that American Club's policy for asbestosis claims resulting from exposure prior to 1989 has been to apply a deductible for each policy year in which a particular seaman worked.[3] Mr. McGowan described American Club's policy in detail. He testified that for asbestos exposures prior to 1989, American Club indemnified its members' asbestosis claims by first apportioning individual claims among all of the triggered policies based upon the amount of time the particular seaman had worked in each of the policy periods. Then American Club would subtract one deductible from each of the amounts allocated to the different policies. Both Mr. Craig's testimony and the minutes from the American Club Board of Directors' meetings were consistent with Mr. McGowan's testimony regarding this application of deductibles. There was no contrary evidence presented on this issue.

The preponderance of the proffered evidence does not demonstrate, however, that PLI either acquiesced to American Club's policy of applying deductibles or concurred with American Club's definition of "occurrence." American Club's first argument was that PLI demonstrated its concurrence with American Club's deductible policy by failing to object to the policy through its representative on the American Club Board of Directors. That argument is unpersuasive.

The evidence presented by American Club, both in the form of Mr. McGowan's testimony and minutes from the American Club Board of Directors' meetings, indicates that the subject of deductibles in asbestosis claims was raised before the board of directors. At the board's meeting on September 17, 1987, a letter from American Club's counsel providing a recommendation for applying asbestosis deductibles was presented to the board's members. While a discussion

---

**3.** In 1989, American Club adopted a different policy regarding the application of deductibles in asbestosis claims in order to accord its policy with the policies of other members of an international group of insurers which American Club had joined. This change does not directly affect this case, however, since American Club maintained its previous policy for all exposure which occurred prior to 1989 and all of the PLI asbestosis claims concern pre–1989 exposure.

of the letter was placed on the agenda for the following board of directors' meeting, to be held on November 7, 1987, the letter was not discussed at that meeting. It was not considered until a board meeting almost two years later on September 14, 1989, when the recommendations were approved.

American Club argued that if PLI had any objection to American Club's asbestosis deductible policy, it would have registered that objection with the board of directors. However, the evidence presented by American Club suggests that the subject of asbestosis deductibles was not broached by the board until September 1987 nor discussed until September 1989, over three years after February 1986 when PLI ceased having its vessels insured by American Club. American Club's argument is thus premised not on PLI having supported American Club's policy during the board's discussions, but rather on its having failed to object to the policy before it was ever discussed by the board. This argument requires that the Court draw an inference that PLI's choice to not unilaterally raise an objection to the policy is evidence that PLI concurred with the policy.

This Court will not, based on the evidence before it, draw an inference that PLI's silence signaled its concurrence with American Club's asbestosis deductible policy. The second circuit has provided that

In the fact finding process a trier is authorized to draw reasonable inferences from known or proven facts. But the inference, to qualify as a fact found, must be reasonable, and, in the context of the known facts, be one that springs readily and logically to mind and is not one of two or more inferences, both or all of which are about equally probable.

*Frankel v. Slotkin*, 984 F.2d 1328, 1335 (2d Cir.1993) (quoting *N.L.R.B. v. Martin A. Gleason, Inc.*, 534 F.2d 466, 474 (2d Cir. 1976)). In this case, there are at least two inferences which could be drawn from PLI's silence. It is possible that PLI's silence demonstrated its acquiescence to the policy. However, it is also possible that the issue of asbestosis deductibles was not sufficiently

significant prior to February 1986 to prompt PLI to register the objections it did have to the policy. This lack of significance is supported by the apparent fact that the Shipowners Claims Bureau did not find it necessary to seek either counsel's or the American Club Board of Directors' input regarding the policy until 1987. Since these inferences appear equally probable, this Court will not infer from PLI's failure to register, on its own initiative, any objection to the American Club policy that it concurred with that policy.

American Club secondly argued that PLI, by accepting claim reimbursements to which American Club's asbestosis deductible policy had been applied, must have concurred with that policy. While American Club's argument that such an ongoing practice could demonstrate PLI's acquiescence is sound, the only substantial evidence presented by American Club directly controverts their claim that any such practice existed.

American Club's evidence of PLI's acceptance of asbestosis claim reimbursements included: (1) Mr. McGowan and Mr. Craig's testimony; (2) copies of American Club internal worksheets; and (3) copies of the original paperwork for one completed claim.[4] While both witnesses testified that PLI did accept American Club's claim reimbursements and that PLI never instituted any suits challenging those reimbursements, the witnesses did not testify as to particular claims or the nature of the acceptance. The testimony, therefore, is insufficient, by itself, to demonstrate PLI's acquiescence.

The internal worksheets are also accorded very little evidentiary weight by this Court. They were, according to Mr. McGowan's testimony, prepared at his direction prior to the September 1987 board of directors' meeting for the purpose of comparing the effect of different approaches of applying deductibles. Each of the eleven worksheets concerned a different asbestosis claim against PLI reimbursed by American Club. The information provided on the worksheets included the name of the claimant, the amount of the claim for which PLI was responsible, the

---

4. While complete paperwork of two other claims was also provided, those claims only involved insureds other than PLI and do not provide any evidence relating to PLI's practices.

amounts of the deductibles and policy limits for each of the years in which the claimant worked on PLI vessels, and the amounts that American Club would reimburse under each of two different deductible approaches. They were, however, very informal handwritten internal worksheets which did not provide any corroboration that the amounts indicated are accurate, were ever received by PLI, were accepted by PLI, and were not objected to by PLI.

The only documentary evidence presented of PLI's acceptance of any asbestos claim reimbursements—that included a document prepared by PLI and documents prepared by the American Club when the transaction occurred—was the complete paperwork of one of the eleven claims in the worksheets. The paperwork for that claim concerned a claim made by the wife of an electrician who had been employed on Grace Lines's (PLI's predecessor) vessels for fifteen years between 1943 and 1965 and died in 1979 due to malignant mesothelioma, a condition alleged to have been caused by his exposure to asbestos during his employment. On December 6, 1983, PLI settled the claim with the decedent's wife for $50,000 which it paid by check dated February 1, 1984. On December 14, 1983, PLI notified the Shipowners Claims Bureau of the settlement. In an invoice dated February 6, 1984, signed by PLI's assistant controller, PLI billed the Shipowners Claims Bureau for reimbursement of the settlement amount. Significantly, the amount billed by PLI on the invoice was $49,500 which the invoice indicated represented the full $50,000 minus a *single* deductible of $500. American Club's claim sheet and attached notes indicate that American Club did not pay the amount invoiced by PLI. Instead of applying a single deductible to PLI's claim, American Club applied twelve deductibles amounting to a total deduction of $49,000. American Club paid PLI the remaining $1,000 of the claim in the form of an offset.

American Club argued that PLI's acceptance of the reduced payment on the claim indicated that PLI accepted American Club's deductible policy. The policies provided that PLI had to institute a suit within two years after American Club paid the claim if it disputed the amount it received, which it did not do. American Club buttressed its argument by stressing that PLI's failure to exercise its right to dispute American Club's application of deductibles by instituting a suit evinced its acceptance of American Club's policy.

However, the Court finds this evidence indicates the opposite of what American Club suggested. PLI's invoice and attached paperwork demonstrated that PLI sought to apply only one deductible for more than a dozen triggered policies. Since, according to Mr. McGowan's testimony, it had been American Club's policy since 1980 to apply deductibles in asbestosis claims for each triggered P & I policy, it is likely that PLI was aware of that policy when it prepared the invoice for the electrician's claim. The only inference which can reasonably be drawn from PLI's decision to invoice the greater amount is that, as of February 1984, American Club and PLI interpreted the deductible provision differently. The Court, therefore, cannot conclude from this evidence that PLI ever concurred with or acquiesced to American Club's asbestosis deductible policy.

This Court is further unwilling to draw any significant inference from PLI's choice to not file suit for the amount reduced for the electrician's claim. There are myriad factors that any party must consider before filing a suit against its own insurance club. This is compounded by the fact that the period during which PLI was required by the terms of the P & I policies to file suit immediately preceded the filing of the Chapter 11 involuntary petition. Without more evidence, PLI's failure to institute a suit against American Club does not demonstrate PLI's concurrence with American Club's asbestosis deductible policy.

Further, it appears that evidence of PLI's concurrence should have been available in the form of testimony from PLI's officers or representatives to the American Club Board of Directors. Yet, no testimony nor affidavits from any agent of PLI were presented. Another body of strong evidence would have been the full supporting paperwork for the ten other PLI asbestosis claims referred to

by American Club's internal worksheets. If, after February 1984, PLI had acceded to American Club's interpretation of the deductible provision, that should have been reflected in the PLI invoices and paperwork for later claims. The only claim paperwork provided by American Club reflects PLI's disagreement with American Club over the interpretation of the deductible provision. The Court is unwilling to draw the inferences sought by the American Club and thereby overlook the paucity of evidence presented to it when more substantial evidence should have been available. At the very least, some plausible explanation should have been presented to explain the absence or unavailability of such evidence. Therefore, the Court concludes that the extrinsic evidence offered fails to sufficiently demonstrate that there was any practice between American Club and PLI which elucidates the meaning that the parties attached to the term "occurrence" in the P & I policies' deductible provision.

■ The district court in its remand instructions noted that where the question of an ambiguous term is not resolved by extrinsic evidence, it is then a question of law to be resolved by the court. *See State v. Home Indemnity Co.,* 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969, 486 N.E.2d 827 (1985) ("[I]f the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court."). In its earlier decision, this Court found, as a matter of law, that for purposes of asbestosis claims, the "occurrence" in the American Club P & I policy deductible provision was "the presence of asbestos on each PLI vessel during each triggered policy period." *Prudential Lines,* 148 B.R. at 747. The Court finds no changes in the relevant case law which would warrant reaching a different conclusion now.

■ This Court in its earlier decision relied upon the long line of cases applying the New York law's presumption that the "occurrence" in an insurance context is the underlying event that ultimately results in a filed claim or claims. The New York Court of Appeals first elaborated this principle in *Arthur A. Johnson Corp. v. Indemnity Ins. Co.,* 7 N.Y.2d 222, 196 N.Y.S.2d 678, 164 N.E.2d

704 (1959), where it defined "accident" as the "event of an unfortunate character which takes place without one's foresight or expectation." *Id.* at 228, 196 N.Y.S.2d 678, 164 N.E.2d 704. This definition was subsequently extended to "occurrence" as well in *Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d 169, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973).

Perhaps more important than the definition the court in *Johnson* adopted are the definitions it rejected. It rejected defining "accident" as "the negligent act or omission" which caused the injury. *Johnson,* 7 N.Y.2d at 227–28, 196 N.Y.S.2d 678, 164 N.E.2d 704. It rejected defining the number of "accidents" as "the number of persons damaged." *Id.* at 228, 196 N.Y.S.2d 678, 164 N.E.2d 704. Thus, New York courts called upon to define "unfortunate event" after *Johnson* have been guided to look for the underlying event rather than negligent acts or the number of persons injured.

As this Court noted in its earlier decision, several courts which have applied *Johnson*'s holding have broadly construed a single "occurrence" as encompassing the many injuries or claims which have resulted from an underlying event, process or condition. In *Wesolowski,* the court held that there had been only one "occurrence" where insured's automobile separately struck two different vehicles more than 100 feet apart. In *Uniroyal, Inc. v. Home Insurance Co.,* 707 F.Supp. 1368 (E.D.N.Y.1988), the court found that there had been only one "occurrence" where a manufacturer of Agent Orange had made numerous deliveries of the chemical to the United States military, and it was sprayed in Vietnam, injuring 2.5 million soldiers. In *Champion Int'l Corp. v. Continental Casualty Co.,* 546 F.2d 502 (2d Cir.1976), the court concluded there had been only one "occurrence" where defective vinyl paneling was installed in the 1,400 houseboats, trailers, and motor homes of 26 different customer companies.

It was this line of cases which led this Court to conclude in its earlier decision that the "occurrence" in this case was the general presence of asbestos on board the PLI ships. However, since that time, the Second Circuit

Court of Appeals in *Stonewall Ins. Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir.1995), rendered a decision which, American Club argued, casts some doubt upon the continuing validity of broadly construing the term "occurrence" under New York law. In *Stonewall*, NGC, the insured, was a leading manufacturer of asbestos-containing materials ("ACMs") from 1930 to 1981. After 1980, NGC was sued by thousands of building owners for the property damage caused by NGC's ACMs. The deductible provision in NGC's property-damage insurance policy allowed one deductible per "occurrence." The second circuit held the "occurrence" to be

> reasonably understood not as NGC's general decision to manufacture asbestos but rather as the installation of ACMs. Each installation created exposure to "a condition which resulted in property damage neither expected nor intended from the standpoint of the insured," and for each installation, there was a new exposure and another occurrence.

*Id.* at 1213. The court distinguishes its holding from its earlier holding in *Champion*, where it found the 1,400 installations of defective paneling to be one "occurrence," on the ground that the insured in *Champion* was a wholesaler while the insured in *Stonewall* was a manufacturer.

> In *Champion*, the insured was exposed to liability merely because it had delivered the defective product; in this case, by contrast, NGC's liability, as reflected in the underlying complaints, results not from its delivery of asbestos-containing products, but rather from its manufacture of those products, resulting in the presence of ACMs each time the products were installed on the property of third parties. Consequently, each location at which NGC's products are present, reflecting a separate installation of those products, is the site of a separate occurrence requiring imposition of another deductible.

*Id.* at 1214.

American Club argued that *Stonewall* requires this Court to define "occurrence" in this case as each individual seaman's exposure to asbestos. It contends that the princi-

ple of *Stonewall*, properly understood, is that events widely separated in time and space, cannot be aggregated into one occurrence. Applying that principle to this case, American Club argued, prohibits the aggregation of many different seamen's exposures across time into a single "occurrence."

Despite American Club's arguments, the Court finds that *Stonewall* does not require a different interpretation of "occurrence" than the presence of asbestos definition reached in the Court's original decision. First, while the *Stonewall* court's interpretation of "occurrence" happens to lead to a large number of "occurrences" in that case, it is still fully consistent with how the Court interpreted "occurrence" in this case. In fact, the court in *Stonewall* defined an "occurrence" as each installation of the asbestos-containing materials, a definition quite similar to the presence of asbestos definition is this case. This reading of *Stonewall* as premising the number of "occurrences" on the number of discrete locations where the asbestos is found is also consistent with other courts' readings of *Stonewall*. *See Endicott Johnson Corp. v. Liberty Mutual Ins. Co.*, 928 F.Supp. 176, 181 (N.D.N.Y.1996) (rejecting plaintiff's argument that *Stonewall* represents a time-specific decision, holding instead it was "a place-specific decision—i.e., there was an occurrence in each place the product was installed").

Second, the court in *Stonewall* held that the term "occurrence" in the deductible provision was not ambiguous. *See Stonewall*, 73 F.3d at 1214 ("Though we recognize the maxim of construing ambiguous provisions in favor of policy-holder, we do not find the 'per occurrence' deductible provisions ambiguous...."). Unlike this Court, the *Stonewall* court's analysis did not include application of the rule of construction referred to as *contra proferentem.*

■ It is a standard maxim of contract construction that where the language of a written document is reasonably susceptible to more than one meaning, its terms shall be construed against the party which drafted the document. *See* Restatement (Second) of Contracts § 206 (1979) ("In choosing among

the reasonable meanings ... that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). This rule is sometimes referred to as *omnia praesumuntur contra proferentem* which, translated literally, means "all things are presumed against the offeror."

 New York courts have specifically formulated a *contra proferentem* rule for insurance contracts.

The principles governing interpretation of insurance contracts are well settled. Unambiguous provisions of a policy are given their plain and ordinary meaning. But where there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer.

*Lavanant v. General Accident Ins. Co. of America,* 79 N.Y.2d 623, 629, 584 N.Y.S.2d 744, 595 N.E.2d 819 (1992); *see also United States Fire Ins. Co. v. General Reinsurance Corp.,* 949 F.2d 569, 573 (2d Cir.1991) ("In the insurance context, the rule [of *contra proferentem* ] requires that an ambiguous policy be construed against the insurer."); *Endicott Johnson Co. v. Liberty Mutual Ins. Co.,* 928 F.Supp. 176, 182 (N.D.N.Y.1996) ("Because the parties have not presented any helpful extrinsic evidence regarding the proper interpretation, this ambiguity should, by law, be construed against the insurer.").

The district court found the term "occurrence" to be ambiguous. This Court finds that ambiguity has not been resolved by the extrinsic evidence presented at trial. The Court must apply *contra proferentem* when choosing between reasonable constructions. Therefore, even if the Court was persuaded that *Stonewall* permitted the narrow definition of "occurrence" supported by American Club, the Court would still be bound to adopt the presence of asbestos definition since it is the construction most advantageous to the insured.

*CONCLUSION*

The district court's remand directed this Court to consider whether the extrinsic evidence offered by the parties resolves the ambiguity in the deductible provisions of numerous P & I policies as applied to asbestosis claims. The evidence proffered by the parties did not demonstrate any practice between the parties which indicates they attached a similar meaning to the provision. Therefore, resolving the ambiguity is a matter of law for the courts to decide. The Court finds no reason to reject its earlier determination that, as a matter of law, the "occurrence" in this case is the general presence of asbestos on each PLI vessel during each triggered policy. This construction of "occurrence" will permit American Club to apply a single deductible for all the asbestosis claims indemnified by each P & I policy.

MALC is directed to settle an order on five days notice consistent with this decision.