In re **PRUDENTIAL LINES, INC., Debtor.**

Lee **DICOLA, Trustee of the PLI Disbursement Trust, Plaintiff,**

Asbestos Claimants Represented By Maritime Asbestosis Legal Clinic, Intervenor–Plaintiff–Appellees,

v.

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., Defendant–Appellant.**

No. 97 Civ. 0720 (CSH).
Bankruptcy No. 86–11773.
Adversary No. 90–6830A.

United States District Court,
S.D. New York.

June 12, 1997.

Alan Kellman, The Maritime Asbestosis Legal Clinic, The Jaques Admiralty Law Firm, P.C., Detroit, MI, for Intervenor–Plaintiff–Appellee.

Christy & Viener, New York City, Richard H. Brown, Jr., Kirlin, Campbell, Meadows & Keating, New York City, for Defendant–Appellant.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, Senior District Judge:

The American Steamship Owners Mutual Protection & Indemnity Association, Inc. ("American Club" or "the Club") appeals from an opinion and order of the Bankruptcy Court for this District (Arthur J. Gonzalez, *Judge*), reported at 202 B.R. 13 (Bankr. S.D.N.Y.1996), following a remand from this Court for further proceedings consistent with an opinion reported at 170 B.R. 222 (S.D.N.Y.1994), *appeal dismissed,* 59 F.3d 327 (2d Cir.1995).

*Background*

Familiarity with all prior opinions in this case is presumed. For present purposes, it is sufficient to say that this Court found a measure of ambiguity in that provision in the insurance policies at issue which reads: "Claims hereunder, other than for burial expenses, are subject to a deduction of \$____ with respect to each accident or occurrence." Affirming the bankruptcy court (opinion of Conrad, *Judge,* reported at 148 B.R. 730 (Bankr.S.D.N.Y.1992)), I held that the phrase "claims hereunder" was not ambiguous, should be read as "all claims hereunder," served only as an introductory phrase not directly linked to the application of deductibles, and consequently required only that the deductible be applied to each "occurrence."

However, reversing the bankruptcy court, I held that the term "occurrence" was ambiguous, and remanded the case to the bankruptcy court for the taking of extrinsic evidence as to its meaning. American Club and its intervening opponent in this adversary proceeding, the Maritime Asbestosis Legal Clinic ("MALC"), offer two competing interpretations of "occurrence" which could plausibly be utilized in asbestosis claims. They are aptly summarized by Judge Gonzalez in his opinion on remand: "The first, supported by American Club, would find the 'occurrence' to be each individual seaman's exposure to asbestos over one policy period. The second, supported by MALC, would find the 'occurrence' to be the general presence of

asbestos on PLI vessels." 202 B.R. at 18. These conflicting interpretations have profound effects upon the calculation of deductible amounts under the policies. As the bankruptcy court observed, "American Club's construction would allow deductibles to be applied to each seaman's claim for each year the seaman was employed on PLI vessels— most claims would therefore be subject to multiple deductibles. MALC's construction would only allow one deductible to be applied for each policy year, regardless of the number of claims—most claims would therefore be subject to pro rata portions of deductibles." *Id.*

American Club's position is that a practice in respect of deductibles, consistent with its interpretation, had evolved over time between the Club and its shipowner insureds, including PLI. When the case was previously before this Court, the only pertinent evidence, an American Club officer's affidavit and an agreed statement of facts, "fail[ed] to sufficiently detail the parties' practice, as distinguished from American Club's policy, in applying deductibles." 170 B.R. at 239. In remanding the case, I said: "It is unclear on the present record whether all extrinsic evidence relating to the parties' course of dealing with respect to applying deductibles to claims arising from exposure to asbestos has been presented. Accordingly, the case will be remanded to the bankruptcy court to consider any additional extrinsic evidence on the issue. If extrinsic evidence does not resolve the question, application of the *contra proferentem* rule will." 170 B.R. at 239. Prior proceedings in the bankruptcy court had been conducted before Judge Francis G. Conrad, but the remand fell to Judge Gonzalez.

In a paradigmatic example of the parental relationship between a wish and a thought, American Club expressed the thought to Judge Gonzalez that the scope of remand was sufficiently broad to allow the meaning of the phrase "claims hereunder" to be revisited and extrinsic evidence offered on that subject as well. As Judge Gonzalez properly recognized, extrinsic evidence was inadmissible

with respect to that phrase, because both the bankruptcy court and this Court had held that the phrase was unambiguous, thereby establishing the law of the case at these levels of the judicial hierarchy. 202 B.R. at 17. Judge Gonzalez also rejected American Club's contention that the meaning of "claims hereunder" was reopened by a phrase that the court of appeals used *en passant,* 59 F.3d at 332, in dismissing the appeal from this Court's prior order for lack of appellate jurisdiction. *Id.*

On remand, American Club called two witnesses and introduced nine exhibits. MALC called no witnesses and offered one exhibit. I will consider the evidence *infra.* At the conclusion of the hearing, the bankruptcy court held that the preponderance of the evidence demonstrated "that American Club's policy for asbestosis claims resulting prior to 1989 has been to apply a deductible for each policy year in which a seaman worked," but that the preponderance of evidence did not demonstrate "that PLI either acquiesced to American Club's policy of applying deductibles or concurred with American Club's definition of 'occurrence.'" 202 B.R. at 19. The bankruptcy court reasoned that since the extrinsic evidence on remand "did not demonstrate any practice between the parties which indicates they attached a similar meaning to the provision," the ambiguity which this Court found the term "occurrence" remained unresolved, so that the application of *contra proferentem* required adoption of MALC's interpretation. *Id.* at 24.

This appeal followed.

### Discussion

In this "core" proceeding, the bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law *de novo. Brunner v. New York State Higher Educ. Services,* 831 F.2d 395, 396 (2d Cir.1987).[1]

■ The two witnesses called by American Club were Thomas J. McGowan and William Craig. They are respectively president and

---

1. I have previously held that this is a core proceeding. 170 B.R. at 227–230. I decline American Club's invitation to revisit that issue on this appeal.

senior vice president of Shipowners Claims Bureau ("SCB"), American Club's manager.

McGowan testified that American Club began to receive claims for asbestosis reimbursement in about 1980. The Club adopted a practice of applying "one deductible for each policy year in which there was exposure." Tr. 24. According to McGowan, that policy "was generally accepted by the members," with the sole exception of Farrell Lines. Tr. 32.[2] Farrell Lines' insurance manager, Richard LePage, took the position that the Club "should take only one deductible," by which he meant "one deductible per claim," no matter how many policy years were involved. Tr. 33. No shipowner member ever suggested that "there should be less than one deductible per claim." Id.

McGowan testified that any member who disagreed with SCB's practices had the right to raise the issue with the Club's board of directors. The question of application of deductibles to asbestos claims was first raised before the board at a meeting on September 17, 1987, where a lengthy opinion of counsel on the subject was presented. Tr. 37–38. Counsel concluded that "although there is ample room for argument on both sides of the question, we believe a full deductible for each policy year is proper under the policy terms." Ex. B at 8533. The board took no action and tabled the matter, not returning to it until a meeting on September 14, 1989. I need not recite in detail what then occurred, since PLI had left the Club in 1986. It is pertinent to note, however, that at the September 1989 meeting the board approved the manager's recommendation that "[f]or exposures occurring prior to February 20, 1989 the present practice of using multiple deductibles be continued." Ex. C at 8683.

McGowan testified that all the asbestos claims against the Club have been reimbursed on the basis of one deductible per policy year; that PLI accepted reimbursement on the basis of one deductible per policy year; and that, although shipowner members can sue the Club if they disagree with its disposition of claims, no member,

including PLI, has brought an action to challenge that calculation of deductibles in respect of asbestos claims. Tr. 48–49.

Craig, presently SCB's senior vice president in charge of claims administration, joined the company in June, 1985. Tr. 68. Prior to that time he had worked for 39 years in claims administration with Isthmian Lines, another American-flag shipowner. In that capacity Craig became familiar with American Club's deductible practice, which was to calculate "one deductible per accident. I don't call them occurrence. An accident, an occurrence, an incident, to me, were all one.' That's what the claim is based on. If you want to break it down an accident actually covered personal injury." Furthermore, "[i]t was always one deductible per accident per year." Tr. 75–76. After Craig joined SCB, American Club continued to follow the practice of "one deductible per policy year for asbestos claims." Tr. 78.

American Club offered documents with respect to eleven claims for asbestos reimbursement submitted by PLI. Judge Gonzalez found that those eleven claims were referred to in internal worksheets prepared by SCB at McGowan's direction prior to the September 1987 board meeting "for the purpose of comparing the effect of different approaches of applying deductibles." 202 B.R. at 21. He accorded these worksheets "very little evidentiary weight" because they "did not provide any corroboration that the amounts indicated are accurate, were ever received by PLI, were accepted by PLI, and were not objected to by PLI." Id.

Three of the eleven PLI claims referred to in these worksheets were testified to by the witnesses: two by McGowan and one by Craig. Specifically, McGowan testified about asbestosis claims involving Edmund Curry and Robert Swan, Tr. 46–48, and Craig testified about a claim involving Dwight Graham, Tr. 80–82. Craig also identified documents relating to the Graham claim which were received collectively as Ex. H.

2. It is worth reiterating at this point that American Club is a mutual insurance entity. Its shipowner members are also its insureds.

The worksheets on the Curry claim revealed that of the $35,000 paid to settle that claim, PLI's share was $6,265.[3] McGowan testified that on an amount of $6,265, PLI would have no claim for reimbursement by the American Club, either on the multiple-year deductible calculation followed by the Club or under a single deductible approach. Tr. 46–48. This testimony sheds no light on the issue involved in the remand. But that cannot be said of the Swan and Graham claims.

On the Swan claim, PLI paid the claimant $350,000. Only one policy year, 1950, was involved. PLI presented a claim for reimbursement to American Club. The Club applied the policy deductible for that year of $500, reducing the claim to $349,500, but increased its payment to PLI by $62,697 for legal and related expenses, so that PLI received a total of $412,197. McGowan testified: "There is only one insurance year and one deductible of $500 was applied." Tr. 48.

On the Graham claim, PLI's paid out $50,000 and, in late 1983 or early 1984, presented a claim for reimbursement to American Club. This time, more than one policy year was involved: there were twelve (1952–1963). The Club applied a deductible for each policy year. The deductibles totalled $49,000.[4] Accordingly the Club paid PLI $1,000 plus legal expenses of $2,463.65.[5] So far as American Club's records reveal, PLI accepted that payment without protest. Craig Tr. 82.

The resolutions of the Swan and Graham claims are pertinent because neither conforms to the application of deductibles for which MALC contends, namely, only one deductible per policy, no matter how many claims arise under that policy. The worksheets on the Swan claim reflect no effort to allocate a single deductible among that claim and others for that policy year, undoubtedly because it never occurred to American Club to make that effort; and there is no evidence that this approach occurred to PLI either,

although a reduction in the deductible would have redounded to its benefit.

To be sure, the deductible amount involved in the Swan claim was relatively small. But the Club's processing of the Graham claim, in a manner consistent with its policy of one deductible per claim per policy year, had the effect of eliminating 98% of PLI's $50,000 reimbursement claim (exclusive of legal fees), a result that the evidence shows PLI accepted without a murmur.

The bankruptcy court concluded that the evidence did not demonstrate "that PLI either acquiesced to American Club's policy of applying deductibles or concurred with American Club's definition of 'occurrence.'" 202 B.R. at 19. The court's use of the disjunctive is appropriate, since in law "acquiesce" and "concur" mean different things. Black's Law Dictionary (4th ed.1951) defines "acquiesce" as "to give an implied consent to a transaction, to the accrual of a right, or to any act, by one's mere silence, or without express assent or acknowledgment." It defines "concur" as "to agree; accord; act together; consent." To the extent that courts find enlightenment in the lay definitions of general dictionaries, a district court has had occasion to observe that "one of the dictionary synonyms for 'consent' is 'acquiescence,' which embraces something less than an affirmative joinder in a particular decision." *United States v. Sixty Acres,* 727 F.Supp. 1414, 1420 (N.D.Ala.1990) (holding that, in forfeiture action under narcotics laws, landowner failed to prove her lack of consent that land would be used in connection with drug transactions).

In the case at bar, I agree with the bankruptcy court that American Club did not prove PLI's concurrence in the Club's deductible policy. But I think it is plain that the Club proved PLI's acquiescence in that policy, and that the bankruptcy court's contrary conclusion is clearly erroneous.

---

3. The record does not reveal the details of the apportionment of the settlement amount between PLI and, presumably, other entities.

4. The policy deductibles increased over time, from $500 in 1952 to $10,000 in 1963.

5. American Club's $1,000 reimbursement on the claim took the form of an offset against premiums PLI owed the Club, Craig Tr. 81, but that does not affect the analysis.

The testimony of McGowan and Craig shows that American Club consistently adhered to its asbestos deductible policy during the period of PLI's membership. The Club applied that policy to all asbestos claims submitted by all its members, including PLI, and the only evidence in the record with respect to PLI claims reflects the company's acceptance of the policy. MALC says that the number of PLI claims is not great, but that is simply a fact of life; McGowan's September 16, 1987 memorandum to the Club board (over a year after PLI withdrew) states that as of that date, all "the Members have submitted 127 related claims," a relatively small total and only a harbinger of what was to come. But the issue turns upon the preponderance of the evidence in the record, which demonstrates PLI's acquiescence in the Club's calculation of deductibles; it is no answer to say that if PLI had stayed in the Club longer, there would have been even more evidence.

Policies such as these were determined at the board of directors level. PLI was represented on the American Club board during the entire period, McGowan Tr. 49, and never objected to the asbestos deductible policy or raised a question about it, *id.* at 50. The ability of a Club shipowner member to make such an objection is evidenced by a furious letter dated February 24, 1987 to McGowan from Farrell Lines' Mr. LePage. Farrell Lines had submitted a reimbursement claim in the amount of $114,823.69 in respect of the asbestos-related illness and death of a seaman named Hodgkins. An SCB adjuster had advised Farrell Lines that "aggregate deductibles apply to this case, and, as a consequence, the Member has no claim on the Association." LePage characterized that result as "totally disagreeable," and argued that "there is no wording in the P & I policy providing a basis for applying more than one deductible to a personal injury, illness or death of a crew member of an insured vessel arising out of an accident or occurrence." LePage's protest led to the Club board placing the asbestos deductible issue on the agenda for its September 1987 meeting. While PLI had left the Club at the time of LePage's letter and the Club's reaction to it, the LePage letter is pertinent to this case

because LePage was complaining about precisely the same effect upon Farrell Lines' request for reimbursement on the Hodgkins claim that American Club's policy had upon PLI's request for reimbursement on the Graham claim. PLI's acceptance of the Club's reduced payment on that claim, coupled with the fact that it did not sue the Club on that or any comparable claim, furnishes further evidence of PLI's acquiescence in American Club's policy and practice in respect of asbestos deductibles.

Accordingly I reverse the bankruptcy court and conclude that the evidence on remand establishes that acquiescence. It follows that American Club is entitled to the benefit of a deductible on a PLI asbestos claim for each of the policies implicated by the claim. This conclusion has no effect upon this Court's previous holding on the quite different issue of coverage allocation. *See* 170 B.R. at 232–236.

Having reached that conclusion, I need not consider *contra proferentem,* since that maxim would come into play only if the evidence on remand had not demonstrated an American Club practice acquiesced in by PLI. However, in the sure and certain expectation of a further appeal in this case, it may not be inappropriate for me to indicate my view on that issue.

 I think that *contra proferentem* could not be applied to inflict upon American Club the calculation of deductibles for which MALC contends. That calculation, as noted, would provide only one deductible per policy per year, no matter how many claims were made, so that in any year where more than one claim was asserted under the policy, no claim would be subject to a full deductible. While *contra proferentem* is an established principle of insurance law, it is typically applied where "the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations," one proffered by the insurer and the other by the insured. *State v. Home Indemnity Co.,* 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969, 486 N.E.2d 827 (Ct. App.1985). In the case at bar, MALC was not a party to these contracts of insurance, and there is no evidence that any party to

them suggested an interpretation that would have imposed so drastic a limitation upon that partial shield conferred upon an insurer by a deductible provision. If I were to apply *contra proferentem* in this case, I would look to that far more reasonable interpretation urged, albeit unsuccessfully, by Farrell Lines in 1987.

The judgment of the bankruptcy court is reversed, and the case remanded for further proceedings consistent with this opinion.