"WINTER, Circuit Judge:
 

 Nicholas Grammatikakis, a/k/a Nicholas Grammas, appeals from Judge Brieant’s vacating of Bankruptcy Judge Hardin’s order that granted relief from the automatic-stay provision of 11 U.S.C. § 362(a) pursuant to 11 U.S.C. § 362(d)(2). Grammas sought relief from the stay to pursue a state-court foreclosure action on a parcel of land owned by Pegasus Agency, Inc. (“Pegasus”). The bankruptcy judge concluded that Pegasus had not demonstrated a reasonable prospect of a reorganization, as required to sustain the stay pursuant to Section 362(d)(2)(B) and the decision in
 
 United Sav. Ass’n v. Timbers of Inwood Forest Assocs.,
 
 484 U.S. 365, 375-76, 108 S.Ct. 626, 632-33, 98 L.Ed.2d 740 (1988). On appeal to the district court, Judge Brieant vacated the bankruptcy court’s order and remanded to the bankruptcy court to calculate the value of Grammas’s collateral in the property, potentially to bifurcate Gram-mas’s debt, and to set a deadline for presenting the actual reorganization plan. Pegasus argues that we have no appellate jurisdiction because the. remand order is non-final. We disagree. We also believe that the bankruptcy court was correct in determining that Pegasus failed to demonstrate any reasonable prospect of a successful reorganization. We therefore reverse.
 

 BACKGROUND
 

 Pegasus is a New York corporation primarily engaged in the business of owning investment real estate. Pegasus is owned
 
 *884
 
 and operated by its President and sole shareholder, Aaron Hochman. When Pegasus filed its Chapter 11 petition, its assets consisted of six parcels of real estate. Five of the properties were encumbered by mortgages that render them irrelevant to the present appeal. The sixth property, the one at issue in this case, is a six-acre, beachfront parcel of land located at 560 Davenport Avenue in New Rochelle, New York (“Davenport Property”). Pegasus acquired the Davenport Property in 1979. Thereafter, Hochman used the 5,500 square-foot single-family Tudor home located on the Davenport Property as his personal residence. However, he paid no rent to Pegasus.
 

 In May 1989, Pegasus executed notes and a mortgage with First Nationwide Bank, secured by the Davenport Property, for the original principal amount of $1,500,000. After Pegasus failed to make required payments on principal and interest, First Nationwide obtained a judgment of foreclosure on November 10, 1994, for $2,269,709.75. A foreclosure sale was scheduled for December 22, 1994, but Pegasus filed its bankruptcy petition on that same day, thereby automatically staying the foreclosure action pursuant to the automatic stay of Section 362(a).
 

 In April 1995, Grammas, who owns a beach club contiguous to the Davenport Property, purchased First Nationwide’s notes, mortgage, and foreclosure judgment for $1,200,-000. Grammas then petitioned the bankruptcy court for relief from the automatic stay. To be entitled to such relief, a petitioner must show: (i) that the “debtor does not have equity in such property,” § 362(d)(2)(A); and (ii) that the property “is not necessary to an effective reorganization,” § 362(d)(2)(B). The parties agree that Pegasus has no equity in the Davenport Property, because Pegasus’s indebtedness to Grammas exceeds the value of the collateral. On July 27, 1995 and August 1, 1995, Bankruptcy Judge Hardin held hearings to determine the remaining issue of whether the Property was “necessary to an effective reorganization.”
 

 That determination is governed by a test articulated in
 
 United Sav. Ass’n v. Timbers of Inwood Forest Assocs.
 
 484 U.S. 365, 375-376, 108 S.Ct. 626, 632-33, 98 L.Ed.2d 740 (1988): the debtor must “not merely ... show[ ] that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization
 
 that is in prospect.”
 
 The Court continued, “there must be a reasonable possibility of a successful reorganization within a reasonable time.”
 
 Id.
 
 at 376, 108 S.Ct. at 632 (internal quotation omitted). In an attempt to meet the
 
 Inwood
 
 test, Pegasus proffered a reorganization proposal that envisioned subdividing the Davenport Property into a number of lots between eight and eighteen. Under the plan, Pegasus would build residential homes on all the subdivided lots, estimated to sell at $600,000 each. Hochman testified that he would personally fund this development, as long as he could “make a profit on the transaction” in the range of “a million or two million dollars.”
 

 The bankruptcy court rejected Pegasus’s proposal, finding that it was based on “fanciful” calculations that were “conclusory and unsubstantiated expressions of optimism.”
 
 In re Pegasus Agency, Inc.,
 
 186 B.R. 597, 602-03 (Bankr.S.D.N.Y.1995). The bankruptcy court further reasoned that the proposed plan could never succeed because, by its own calculations, the reorganization’s revenues fell short of Pegasus’s debts, a million-dollar profit for Hochman being out of the question. As presented at the hearing, the proposal projected net pre-tax revenues of $2,080,000 — $263,000 less than the debt owed Grammas, which was approximately $2,343,-000 at the time.
 
 Id.
 
 at 602.
 

 On appeal, the district court vacated the bankruptcy court’s order. The district court reasoned that the bankruptcy judge miscalculated the profitability of the proposed plan when he subtracted the full $2,343,000 owed Grammas from net revenues projected under the plan instead of subtracting only the secured debt — the value of the Davenport Property, a concededly smaller sum.
 
 In re Pegasus Agency, Inc.,
 
 No. 96 Civ. 0068(CLB), at 2-3 (S.D.N.Y. Mar. 26, 1996) (memorandum and order). Accordingly, the district court vacated the bankruptcy court’s order, thereby reimposing the automatic stay. Because the parties did not agree on
 
 *885
 
 the value of the Property (five differing appraisals set a price in the range of $1,150,000 to $2,300,000), the district court remanded the case to the bankruptcy court for valuation, and potential bifurcation of .Grammas’s interest into secured and unsecured claims, as required by 11 U.S.C. § 506(a). He also ordered a deadline set for Pegasus to present the actual reorganization plan.
 
 In re Pegasus,
 
 No. 96 Civ. 0068(CLB), at 3.
 

 DISCUSSION
 

 A.
 
 Appellate Jurisdiction
 

 Title 28 U.S.C. § 158(a) gives district courts jurisdiction to hear appeals from final orders of the bankruptcy courts. The standard for finality in bankruptcy matters is more flexible than in ordinary civil litigation, because bankruptcy proceedings often continue for long periods of time and discrete claims are resolved from time to time over the course of the bankruptcy proceeding.
 
 In re Prudential Lines, Inc.,
 
 59 F.3d 327, 331 (2d Cir.1995). An order lifting the automatic stay is final and appealable,
 
 see In re Chateaugay Corp.,
 
 880 F.2d 1509, 1511 (2d Cir.1989), and the district court therefore had jurisdiction.
 

 Appellate courts, however, have jurisdiction only over final orders of a district court in bankruptcy proceedings, 28 U.S.C. § 158(d), and Pegasus argues that the district court’s remand order is not final and, therefore, not appealable. We disagree.
 

 We have applied a two-step analysis to determine whether we have appellate jurisdiction over a district court’s order in a bankruptcy proceeding. First, we determine whether the underlying decision of the bankruptcy court is final.
 
 Bowers v. Connecticut Nat’l Bank,
 
 847 F.2d 1019, 1021-22 (2d Cir.1988). A bankruptcy judge’s order is final if it “completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief.”
 
 In re Prudential Lines,
 
 59 F.3d at 331 (quoting
 
 In re Integrated Resources, Inc.,
 
 3 F.3d 49, 53 (2d Cir.1993)). Second, if the bankruptcy court’s decision is final, we ask “whether the district court’s disposition independently rendered the matter nonappealable,” i.e., whether the district court’s decision is also final.
 
 Bowers,
 
 847 F.2d at 1022;
 
 accord In re Financial News Network, Inc.,
 
 931 F.2d 217, 220 (2d Cir.1991).
 

 The courts of appeals are divided over how to assess the finality of district court orders in bankruptcy proceedings.
 
 See In re Commercial Contractors, Inc.,
 
 771 F.2d 1373, 1374-75 (10th Cir.1985) (outlining the split in circuits). We have adopted the prevailing view: we lack appellate jurisdiction over orders where the district court has remanded the case for “significant further proceedings” in the bankruptcy court.
 
 In re Prudential Lines,
 
 59 F.3d at 331. It is this line of eases on which Pegasus relies.
 

 However, we have held a district court order lifting the automatic stay of 11 U.S.C. § 362 to be final and appealable.
 
 In re Chateaugay,
 
 880 F.2d at 1511. We have also found finality in the denial of relief from an automatic stay because it is “is the functional equivalent of a permanent injunction,”
 
 id.,
 
 although the better analogy by far is to orders that we have described as final injunctions of limited duration,
 
 see In re Lamas Fin. Corp.,
 
 932 F.2d 147, 151 (2d Cir.1991),
 
 citing Manning v. Energy Conversion Devices, Inc.,
 
 833 F.2d 1096, 1101 (2d Cir.1987) (“preliminary” injunction pending arbitration appealable as final injunction of limited duration). The question now before us is whether the district court’s order, denying relief from the automatic stay but remanding for valuation of the Davenport Property, potential bifurcation of the secured interest, and the setting of a date for presenting a reorganization plan, is a final, appealable order. We believe that it is.
 

 We have previously held that a denial of relief from an automatic stay pending reorganization proceedings that might or might not succeed is appealable.
 
 Lomas,
 
 932 F.2d at 151-52. In that case, the bankruptcy court enjoined a tort action against two of the debtor’s officers that might implicate assets of the debtor. The court identified its source of authority as the provision for an automatic stay, 11 U.S.C. § 362(a)(1), (3), or, alternatively, its general power to issue appropriate orders in the exercise of its juris
 
 *886
 
 diction, 11 U.S.C. § 105(a). An issue as to appealability arose because the bankruptcy court stated that the order was “preliminary” and “pending a hearing on Lomas’ request for permanent injunctive relief,” and because the district court used similar language.
 
 Lo-mas,
 
 932 F.2d at 150. We detected an ambiguity regarding whether the bankruptcy court contemplated further proceedings concerning the merits of enjoining the tort action — e.g., whether assets of the debtor were implicated in the tort action — or simply further proceedings concerning a reorganization of the debtor. We held that, if the bankruptcy court contemplated the former, then its order would not be analogous either to a permanent injunction or to a final injunction of limited duration and would, therefore, not be appealable.
 
 Id.
 
 at 151. We also held that if the contemplated proceedings concerned the reorganization and the injunction would be “reexamined [only] in light of the prospects for reorganization,” then the order would be appealable.
 
 Id.
 
 at 152.
 

 The district court’s order in the present matter clearly falls within the rationale of
 
 Lomas.
 
 The district court stated, “[b]ased on the present record, the findings of the Bankruptcy Court do not support its conclusion that the Debtor’s proposal for the Davenport property, which appears to be essential to any plan of reorganization, has ‘no prospect’.”
 
 In re Pegasus,
 
 No. 96 Civ. 0068(CLB), at 2. The district court then remanded for proceedings necessary to go forward with a reorganization. Valuation of the Davenport Property and potential bifurcation of Grammas’s mortgage interest into secured and unsecured claims, pursuant to 11 U.S.C. § 506(a), are steps Pegasus would have to take to develop a functional reorganization scheme with a debt repayment schedule.
 
 See generally
 
 3
 
 Collier on Bankruptcy
 
 ¶ 506.04 (15th ed.1995) (describing valuation of collateral pursuant to § 506(a)). Similarly, the district court ordered that a “deadline upon the Debtor to present a plan of reorganization” on remand be set. It is, therefore, clear that the denial of relief from the automatic stay would be reexamined, as in
 
 Lo-mas,
 
 only in “light of the prospects for reorganization.”
 
 Lomas,
 
 932 F.2d at 152. The denial of relief from the stay is thus appeal-able.
 

 B.
 
 The Merits
 

 We turn to the merits. Without a credible reorganization plan in prospect, Pegasus is not entitled to the continuation of the automatic stay under Section 362(d)(2)(B).
 
 See United Sav. Ass’n v. Timbers of Inwood Forest Assocs.,
 
 484 U.S. 365, 375-76, 108 S.Ct. 626, 632-33, 98 L.Ed.2d 740 (1988). In our view, the dispositive issue is whether Pegasus’s proposed reorganization plan has any reasonable prospect of success. We hold that it does not.
 

 As noted, two factors must be satisfied to continue the automatic stay as a bar to foreclosure on a debtor’s property. First, under Section 362(d)(2)(A), the debtor must have residual equity in the property. The parties agree that this requirement is not fulfilled because the amount Pegasus owes on its mortgage is greater than the value of the Davenport Property. Second, under Section 362(d)(2)(B), the debtor must show that the property at issue is “necessary to an effective reorganization.” § 362(d)(2)(B);
 
 Timbers of Inwood Forest,
 
 484 U.S. at 375, 108 S.Ct. at 632-33 (debtor’s burden). To demonstrate “necessity,” Pegasus had to show that “the property is essential for an effective reorganization that is in prospect” and that there is a “reasonable possibility of a successful reorganization within a reasonable time.”
 
 Timbers of Inwood Forest,
 
 484 U.S. at 376, 108 S.Ct. at 633 (citation and internal quotation marks omitted).
 

 Pegasus proposed a residential development on the Davenport Property that the bankruptcy judge concluded could not succeed within a reasonable time. The court reached this conclusion for three reasons: (i) Pegasus’s proposal relied on unsubstantiated assumptions and “fanciful” calculations, rather than verifiable research and financial analysis; (ii) by its own calculations, the plan’s projected revenues fell short of paying the full indebtedness owed Grammas; and (iii) Hochman’s commitment to fund the reorganization was not credible, given his testimony that he would invest in the development only if he could reap a million dollars profit or
 
 *887
 
 more, while the plan itself showed no promise of any such return.
 
 In re Pegasus,
 
 186 B.R. 597, 602-08 (Bankr.S.D.N.Y.1995).
 

 The district court held that the bankruptcy court erred on (ii) and (iii) by miscalculating the amount of secured debt owed Grammas and thereby the potential profitability of the plan.
 
 In re Pegasus Agency, Inc.,
 
 No. 96 Civ. 0068(CLB), at 2-3 (S.D.N.Y. Mar. 26, 1996) (memorandum and order). However, whether or not the bankruptcy court erred in calculating the amount of secured debt, the reorganization plan’s unfounded assumptions and dubious calculations rendered it entirely unreliable, and there is, therefore, no prospect of an effective reorganization under any calculation of the debt.
 

 We agree with the bankruptcy court that “[tjhere is no evidence in the record demonstrating that Hochman personally, or others on his behalf, have performed the kind of research, analysis and projections, generally referred to as due diligence, required to make any reliable assessment of the financial feasibility of any plan to develop the Property.”
 
 In re Pegasus,
 
 186 B.R. at 603. Pegasus’s scheme for a residential development was entirely conjectural. Pegasus proposed subdividing the Davenport Property into residential plots and building 3,000 square-foot homes on each plot. It claimed that it would make a “profit” (before paying secured debt obligations) somewhere between $2,200,000 and $5,950,000, depending on whether it subdivided the six-acre Davenport Property into eight or eighteen plots. Pegasus assumed that it could sell each house for $600,000, regardless of whether there were eight plots of approximately one acre in size, or 18 plots of approximately one-third of an acre in size. This fanciful assumption alone undermines the credibility of the entire reorganization proposal.
 

 The remaining calculations, however, are similar shots in the dark. Just as the sale price of a Davenport house does not vary with the size of the lot, the projections also hold constant the site improvement costs at $800,000, no matter how many lots or houses emerge from the subdivision. Eighteen homes would surely entail greater site improvement costs than eight because of the need for more sewer lines, more extensive roads, and more expensive engineering and landscaping services. This problem is never addressed, partly because the plan provides no breakdown of the $800,000 lump sum cost. In addition, the proposal sets the cost of budding the residential houses at $75 to $80 per square foot — a figure substantiated by nothing more than a residential cost handbook and a computerized service found in a building magazine sold to the general public. The $600,000 estimated sale value of each house is substantiated by Hoehman’s testimony alone. Moreover, the only documentation Hochman presented to the court, an “Appraisal Report” by the Gabriele Appraisal Company, estimates the return from selling the Davenport Property- as eight undeveloped lots but never considers the construction of a residential development. In sum, the assumptions and projections proffered in support of Pegasus’s reorganization plan do not pass the straight-face test, and Pegasus has, therefore, utterly failed to meet its burden of showing that the Davenport Property is “necessary to an effective reorganization,” 11 U.S.C. § 362(d)(2)(B).
 
 See In re Kent Terminal Corp.,
 
 166 B.R. 555, 562 (Bankr.S.D.N.Y.1994) (“[i]t goes without saying, that an effective reorganization cannot be based solely on speculation”) (citing
 
 In re Saypol,
 
 31 B.R. 796, 803 (Bankr.S.D.N.Y.1983));
 
 In re New Era Co.,
 
 125 B.R. 725, 730 (S.D.N.Y.1991) (“mere dreams” of reorganization cannot sustain the automatic stay);
 
 In re Diplomat Elecs. Corp.,
 
 82 B.R. 688, 693 (Bankr.S.D.N.Y.1988).
 

 We therefore reverse. We order that the mandate issue forthwith.