In re ENRON CORP., et al., Debtors.

Dynegy Marketing and Trade,
et al., Appellants,

v.

Enron Corp., et al., Appellees.

No. 04 Civ. 3350(LAK).
Bankruptcy No. 01 B 16034(AJG).

United States District Court,
S.D. New York.

Nov. 17, 2004.

Robert A. Johnson, Shuba Satyaprasad, H. Rey Stroube III, Akin, Gump, Strauss, Hauer & Feld LLP, Houston, TX, for Appellants.

Martin J. Bienenstock, Peter Gruenberger, Melanie Gray, Weil, Gotshal & Manges LLP, New York City, for Appellees.

## MEMORANDUM OPINION

KAPLAN, District Judge.

■ Dynegy Marketing and Trade and affiliated entities [1] (collectively, "Dynegy") appeal from an order of the Bankruptcy Court (the "Stay Order") [2] barring Dynegy under the automatic stay provision of the Bankruptcy Code from proceeding with arbitration against several affiliates of Enron Corp. that have not filed for bankruptcy [3] (the "Enron Non–Debtors" or "Non–Debtors"). Enron Corp. and affiliates that have filed for bankruptcy [4] (the "Enron Debtors" or "Debtors") move to dismiss the appeal. The Court concludes that the Stay Order was interlocutory, dismisses the appeal, and denies leave to appeal. [5]

### Facts

At the center of this dispute is a Master Netting Agreement (the "MNA") of November 8, 2001 between Dynegy and the Enron companies. The MNA references numerous preexisting trading agreements among Dynegy and Enron entities and, upon the occurrence of a default under one of those agreements, allows a global netting of obligations so that all amounts owed by all affiliates under the referenced agreements are reduced to a "Final Settlement Amount," a single dollar figure for which either all of the Enron parties or all of the Dynegy parties are jointly and severally liable. All disputes under the MNA are to be resolved by arbitration, with Enron and Dynegy each selecting one arbitrator and those two arbitrators selecting the third. [6]

In late November 2001, Dynegy declared a default by the Enron parties. [7] Over the next year, a dispute developed as to the Final Settlement Amount. [8] On December 2, 2001 and several following dates, the Enron Debtors filed voluntary petitions for relief under the Bankruptcy Code

---

1. Dynegy Power Marketing, Inc., Dynegy Broadband Marketing and Trade, Dynegy Canada Inc., Dynegy*direct* Inc., Dynegy Global Liquids, Inc., Dynegy Liquids Marketing and Trade f/k/a Warren Gas Liquids, Inc., and Dynegy UK Limited.

2. The order is docket item 16853 in the bankruptcy proceeding.

3. The Enron Non–Debtors are Enron Capital and Trade Resources Corp., Enron Capital and Trade Resources, Limited, and Enron Canada Corp.

4. The Enron Debtors are Enron Corp., Enron North America Corp., Enron Power Marketing, Inc., Enron Energy Services, Inc., Enron Capital and Trade Resources International Corp., Enron Gas Liquids, Inc., Enron Broadband Services, L.P., and EnronOnline, LLC.

This opinion uses the term "Enron companies" to refer collectively to the Enron Non–Debtors and the Enron Debtors.

5. If an order of the Bankruptcy Court is interlocutory, a party must obtain leave to appeal it. 28 U.S.C. § 158(a)(3). Although Dynegy has not moved for leave, under FED. R. BANKR. P. 8003(c) the Court may consider the notice of appeal as a motion for leave. *See, e.g., Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 28 (S.D.N.Y.1995).

6. *See* Dynegy Rec. Item 11 Ex. 1.

7. *Id.* Ex. 20.

8. *See id.* Ex. 21; Dynegy Rec. Item 23 Ex D.

in the Southern District of New York Bankruptcy Court.

On October 18, 2002, Dynegy commenced arbitration against the Enron Non–Debtors seeking determination and payment of the Final Settlement Amount,[9] which Dynegy now claims is $68 million.[10] Dynegy moved also to lift the automatic stay in order to commence arbitration against the Enron Debtors.[11] Soon thereafter, the Enron Debtors initiated an adversary proceeding against Dynegy in the Bankruptcy Court seeking, among other things, a declaration that the MNA is avoidable under the Bankruptcy Code.[12]

On December 10, 2003,[13] the Enron Debtors moved, based on the automatic stay[14] and the court's equitable powers,[15] to bar Dynegy from prosecuting the arbitration against the Non–Debtors.[16] They argued that, as the MNA is a netting mechanism, an arbitration ostensibly against only the Non–Debtors would affect the property of the Debtors' estates. An arbitration panel that enforced the MNA against the Non–Debtors necessarily would have to reduce any award to Dynegy by any amounts that Dynegy entities owe the Debtors. The result could be to take the Debtors' property in violation of 11 U.S.C. §§ 362(a)(3) and (7).[17] Dynegy countered that the stay could not apply to the Non–Debtors because there was no evidence that the arbitration would take the property of the Debtors' estates or have "immediate adverse consequences" on the estates.[18]

The Bankruptcy Court agreed with the Enron Debtors.[19] It issued the Stay Order on March 11, 2004, the same day it denied Dynegy's motion to lift the automatic stay to allow arbitration against the Debtors.[20] In ruling on the motion to lift the stay against the Debtors, the Court stated:

> "The Court finds that Dynegy's request to lift the stay to proceed with arbitration should be denied at this juncture.... [T]he Debtors' opposition ...
>
> "[C]ommencement of the Arbitration on October 18, 2002 by the Dynegy Entities constituted a violation of section 362(a)(3) ... inasmuch as
>> 1) property of the estates of Debtors would be directly impacted by the Arbitration;
>> 2) Debtors' contingent interest in any purported right to contribution from nondebtor affiliates would be affected by the Arbitration;
>> 3) the arbitrators' power to modify the MNA could modify the property rights of the estates and the Debtors' contract rights; and
>> 4) no arbitrator could be selected without a requisite lifting of the automatic stay; and it is further
> * * *
> ORDERED that the Dynegy Entities are barred under the automatic stay from any attempt to continue the Arbitration without further order of the Bankruptcy [Court]."

Dynegy Rec. Item 25.

9. Dynegy Rec. Item 23 Ex. C.

10. Dynegy Mem. in Opp'n to Mot. to Dismiss 9.

11. Dynegy Rec. Item 4.

12. Enron Rec. Item 1.

13. The reason for the delay is that Dynegy had agreed to stay the arbitration, and later reactivated it. *See* Dynegy Rec. Item 13 Ex. F.

14. 11 U.S.C. § 362.

15. *See id.* § 105(a).

16. Dynegy Rec. Item 13.

17. *See id.*

18. *See* Dynegy Rec. Item 16.

19. The order held, in relevant part, that:

20. *See* Dynegy Rec. Item 26.

has directed [the Court] to various Bankruptcy Code sections raising issues regarding the underlying enforceability of the master netting agreement. The Court finds that before it reaches a decision as to whether arbitration should proceed, a determination should be made as to the underlying enforceability of the master netting agreement under the Bankruptcy Code.... By this decision, the Court does not deny the ultimate relief sought, that is, compelling arbitration, but denies such at this time to adjudicate whether the agreement itself is enforceable under the Bankruptcy Code. If it is ultimately determined to be enforceable, Dynegy may at that time seek to enforce the arbitration under the applicable case law considering a valid arbitration agreement." [21]

The Court then announced the ruling barring arbitration against the Non–Debtors, reciting the reasons memorialized in the Stay Order.[22]

### Discussion

This Court may not consider this appeal unless the order being appealed from is final or the Court grants leave to appeal an interlocutory order.[23]

### A. Finality of the Stay Order

■ Dynegy argues that the Stay Order is final for two reasons. First, the bankruptcy judge did not state explicitly that he would revisit the issue. Second, several Second Circuit decisions have held that orders denying relief from the automatic stay are final for purposes of appeal. Both arguments fail.

It is true that the court below did not state explicitly that it would revisit the Stay Order.[24] It did, however, make it absolutely clear that it intends to revisit the applicability of the automatic stay to arbitration against the Debtors. It simply is unimaginable that a bankruptcy judge in this context would consider whether an agreement is enforceable against debtors without also considering whether it is enforceable against non-debtors jointly and severally liable on the same agreement.[25] That would be to extend, nonsensically, greater bankruptcy protection to non-debtors than debtors. Because the court clearly intends to revisit the question of the enforceability of the MNA against the debtors—a point that it made clear in ruling on the motion to lift the stay to allow arbitration against the Debtors and that Dynegy has not really disputed—and be-

---

**21.** Dynegy Rec. Item 21 at 6–7.

**22.** *See* Dynegy Rec. Item 22 at 10–15.

**23.** *See* 28 U.S.C. § 158(a).

**24.** The order does state that Dynegy is barred from continuing the arbitration "without further order of the Bankruptcy [Court]." Dynegy Rec. Item 25.

**25.** Dynegy's argument against this seemingly obvious point utterly lacks merit. Dynegy states that even if the Debtors prevail in the adversary proceeding for declaratory relief, "the result would be only that the contractual obligations imposed on the Debtors ... would be *avoidable* in bankruptcy," whereas the MNA contemplates that it will be null and void only if certain provisions are held "invalid, illegal or unenforceable," which is not the same thing as "avoidable." Thus, argues Dynegy, a finding of avoidability as to the Debtors should not affect the Non–Debtors' obligations. Dynegy Mem. in Opp'n to Mot. to Dismiss 19 (emphasis in original). This argument has at least three problems: (1) it fails to explain why, if *Dynegy* prevails in the adversary proceeding, that is, if the MNA is found enforceable (or unavoidable), the bankruptcy judge would continue the stay of arbitration against the Non–Debtors; (2) it assumes the bankruptcy judge will later apply the very law that Dynegy asserts he failed to apply in making the ruling at issue here; (3) it argues the merits of the order.

cause a finding that the MNA is enforceable against the Debtors would appear to require a finding that the MNA is enforceable against the Non–Debtors, the Stay Order is interlocutory.

The Second Circuit decisions cited by Dynegy do not compel a contrary conclusion. *Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial Corp.)* [26] involved a "preliminary injunction" that the bankruptcy court issued under Sections 362(a) and 105 to stay a fraud action against corporate officers of the debtor. The Second Circuit was uncertain whether the injunction was final because it could not determine whether the term "preliminary injunction" meant that the bankruptcy court contemplated a further hearing on whether the fraud action should be enjoined (in which case the injunction would have been an interlocutory order) or only further proceedings regarding the reorganization, which could of course impact the need to enjoin the fraud action, in which case the injunction would have been a final order.[27] In this case, the Court is certain, because the Bankruptcy Court so stated, that that Court contemplates further proceedings on whether arbitration under the MNA should proceed. Under *Lomas*, then, the Stay Order is interlocutory.

*Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)* [28] likewise does not avail. Insofar as it addresses the finality of a bankruptcy court order for purposes of appeal to the district court, *Pegasus* says that "[a] bankruptcy judge's order is final if it 'completely resolve[s] all of the issues pertaining to a discrete claim.' "[29] In light of Judge Gonzalez's expressed intention to revisit the issue of the stay vis-a-vis the Debtors after further consideration of the enforceability of the MNA, it is clear that he has not completely resolved the issues pertaining to the claim that arbitration should not proceed against the non-debtors.

Finally, *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)* [30] does not control. The holding in that decision, which was rendered before *Lomas*, that "the denial of relief from an automatic stay in bankruptcy is equivalent to a permanent injunction and is thus a final order" [31] remains good law, but the statement is incomplete. It does not cover a situation, like that discussed in *Lomas* and present here, in which the bankruptcy judge contemplates further proceedings with respect to the automatic stay.

## B. Leave to Appeal

Dynegy contends that this Court should grant leave to appeal if the Stay Order is interlocutory.

■ The parties agree on the legal standard that governs whether to grant leave to appeal in this case: it is the standard set forth in Section 1292(b) of the Judicial Code,[32] which governs interlocutory appeals from the district courts to in the Courts of Appeals. That is, leave should be granted only if the order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate

---

26.  932 F.2d 147 (2d Cir.1991).

27.  *Id.* at 150–51.

28.  101 F.3d 882 (2d Cir.1996).

29.  *Id.* at 885 (citations omitted).

30.  907 F.2d 1280 (2d Cir.1990).

31.  *Id.* at 1284 (describing holding of *Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26 n. 4 (2d Cir.1982)). *See id.* at 1285 (reaffirming *Taddeo* ).

32.  28 U.S.C. § 1292(b).

appeal from the order may materially advance the ultimate termination of the litigation."[33] Each of these three factors must be present. The Court finds that two are missing, and therefore does not consider the third.

 "[A] question of law is 'controlling' if reversal of the [lower] court's order would terminate the action."[34] The Second Circuit recently found that an interlocutory appeal of a bankruptcy court order did not raise a controlling question of law because there may have been an alternative legal basis for the order.[35] Here there were two alternative bases for the order being appealed. The Bankruptcy Court rested the Stay Order on Section 362 and expressly declined to decide whether the order could be supported, as the Enron Debtors had argued, by the court's general equitable powers under Section 105.[36] If this Court were to reverse the Stay Order, the bankruptcy judge would be required to consider the alternative basis for it. The appeal of the Stay Order therefore does not involve a controlling question of law.

Nor would an appeal materially advance the ultimate termination of the litigation. Affirmance of the Stay Order would not expedite the litigation. Reversal would be likely to complicate it. If this Court were to allow arbitration against the Non-Debtors, there would be questions about the effect of that arbitration on the Debtors' liabilities. As the Enron Debtors point out, there could be parallel proceedings in bankruptcy court and in arbitration, each simultaneously adjudicating amounts due under the MNA, a point that Dynegy's counsel effectively admitted at oral argument in the Bankruptcy Court.[37]

### Conclusion

The motion to dismiss the appeal [docket item 5] is granted. Leave to appeal is denied.

SO ORDERED.

**33.** *See, e.g., In re Worldcom, Inc.,* No. M–47 HB, 2003 WL 21498904 at *10 (S.D.N.Y. June 30, 2003), *In re MacInnis,* 235 B.R. 255, 263 (S.D.N.Y.1998).

**34.** *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 24 (2d Cir.1990).

**35.** *Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.,* 368 F.3d 86, 95 (2d Cir.2004).

**36.** Dynegy Rec. Item 25 at 2 n. 1.

**37.** *See* Dynegy Rec. Item 18 at 44.