### In re QUIGLEY COMPANY, INC., Debtor.

### Quigley Company, Inc., Plaintiff,

### v.

### A.C. Coleman, the Other Parties Listed on Exhibit A to the Complaint, John Does 1–1000 and Jane Does 1–1000, Defendants.

No. M–47 (VM).

Bankruptcy No. 04–15739(PCB).

Adversary No. 04–04262(PCB).

United States District Court, S.D. New York.

April 13, 2005.

---

### *DECISION AND ORDER*

MARRERO, District Judge.

This case is before the Court as a motion by the Ad–Hoc Committee of Tort Victims (the "Committee") for leave to appeal from an injunction issued by the Unit-

ed States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Prudence Carter Beatty, J., on December 17, 2004 in the above-captioned adversary proceeding. *See* Injunction Pursuant to 11 U.S.C. §§ 105(a) and 362(a) and Federal Rule of Bankruptcy Procedure 7065, *In re Quigley Company, Inc.,* Adv. Proc. No. 04–04262 (Bankr.S.D.N.Y. Dec. 17, 2004) ("Preliminary Injunction"). The effect of the injunction was to extend the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Bankruptcy Code"), that currently protects debtor Quigley Company, Inc. ("Quigley"), to Quigley's parent company, Pfizer, Inc. ("Pfizer"), on the grounds that Pfizer allegedly has the right to draw on substantial insurance policies that constitute the primary asset of Quigley's estate. That injunction was entered pursuant to 11 U.S.C. § 362, the automatic stay provision of the Bankruptcy Code, as well as 11 U.S.C. § 105(a), which authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code.

The Committee's motion seeks a determination that it may appeal the injunction to this Court pursuant to 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals "from final judgments, orders, and decrees" of bankruptcy courts. In the alternative, it asks this Court to grant it leave to appeal the injunction pursuant to 28 U.S.C. § 158(a)(3), which authorizes appeals, "with leave of the court, from other interlocutory orders and decrees" of the bankruptcy court.

Quigley argues that the Preliminary Injunction is non-final and therefore not appealable as of right, and that discretionary leave to appeal should not be granted. It also contests the legal standard that ought to apply to this Court's consideration of the Committee's motion. For reasons explained below, the Court agrees with Quigley: the Preliminary Injunction is interlocutory under the legal standards articulated by the Second Circuit, and the Committee has failed to make the showing necessary for the Court to grant leave to appeal.

## I. BACKGROUND

Quigley, a wholly-owned subsidiary of Pfizer that had manufactured a number of refractory products, filed for bankruptcy on September 3, 2004 after being inundated with a slew of asbestos exposure suits by putative victims who had used Quigley's products.[1] Quigley's bankruptcy filing caused all of the suits proceeding against it to be stayed automatically pursuant to 11 U.S.C. § 362(a). On that same date, Quigley filed an adversary proceeding seeking to enjoin all asbestos-related proceedings against Pfizer individually pursuant to 11 U.S.C. §§ 362(a) and 105(a) on the grounds that Quigley and Pfizer share rights in certain insurance policies and are joint beneficiaries of an insurance trust that is used to satisfy settlements, judgments, and defense costs related to asbestos suits against each of the companies.

After holding several hearings, the Bankruptcy Court concluded that Quigley's bankruptcy estate would be immediately and irreparably injured if the automatic stay were not extended to asbestos-related suits against Pfizer that had the potential to deplete shared insurance policies and trust. *See* Preliminary Injunction at 3–4. Under the terms of the in-

---

1. The injunction found that Quigley and Pfizer are defendants in over 160,000 asbestos- related claims.

junction, parties to the action are "stayed, restrained and enjoined from taking any action in any and all pending or future Asbestos Related Claims against Pfizer during the pendency of Quigley's chapter 11 case." *Id.* at 5–6.[2] The Preliminary Injunction states that its intent is to extend the automatic stay provisions of 11 U.S.C. § 362(a), which would only apply to suits against Quigley in the absence of an injunction, to these asbestos-related claims. *See id.* at 6 ("the automatic stay of section 362(a) of the Bankruptcy Code extends to: (1) all pending and future Asbestos Related Claims against Pfizer; and (2) against any property in which both Pfizer and Quigley have a legal, beneficial, contractual or other interest").

While the Preliminary Injunction does not indicate that any future hearings will be held to determine whether the injunction should be made permanent, it does provide for two procedures by which parties subject to the order may seek relief from it. First, the Preliminary Injunction states that a party who "asserts that it holds an Asbestos Related Claim solely against Pfizer based on a product having no relation to Quigley or any product not manufactured, sold or distributed by Quigley" may obtain relief from the Preliminary Injunction by demonstrating to the Bankruptcy Court that it holds a Pfizer-only claim and that the insurance policies and trust Pfizer shares with Quigley "could not be utilized to satisfy any portion of the defense costs, settlements or judgments related to the Pfizer-only Claim." *Id.* at 6. Second, and more importantly for the purposes of this motion, the injunction indicates that the provisions governing relief from the automatic stay applicable to suits against Quigley also allow parties to seek relief from the extension of the automatic stay to asbestos-related suits against Pfizer. *See id.* at 7 ("nothing contained in this order shall prohibit any party in interest from seeking relief from the automatic stay of section 362(a) of the Bankruptcy Code or the terms of this order by filing an appropriate motion with the Court").

On December 27, 2004, the Committee simultaneously filed the instant motion and a notice of appeal of the Preliminary Injunction.

## II. *DISCUSSION*

### A. *THE PRELIMINARY INJUNCTION IS INTERLOCUTORY*

This Court cannot rule on the merits of the Committee's appeal unless it determines that the Preliminary Injunction is a final order or, if the injunction is interlocutory, that leave to appeal the injunction should be granted pursuant to the provisions of 28 U.S.C. § 158(a) and 28 U.S.C. § 1292(b). *See In re Enron Corp.*, 316 B.R. 767, 770 (S.D.N.Y.2004).

 Turning first to the question of whether the Preliminary Injunction should

---

2. The Preliminary Injunction defines "Asbestos Related Claim" as:

 any and all actions or other proceedings against Pfizer, Inc. ("Pfizer") which allege personal injury or wrongful death based on purported exposure to asbestos, silica, mixed dust, talc, or vermiculite ... or which arise out of such personal injury or wrongful death claims, including without limitation, any contract actions and proceedings involving settlement agreements negotiated or allegedly negotiated by Pfizer, and ... including any action against any property in which both Pfizer and Quigley have a legal, equitable, beneficial, contractual or other interest including, without limitation, any insurance policies or proceeds thereof in which Pfizer and Quigley have a shared interest, and including the prosecution or commencement of any other action against Pfizer for the purpose of collecting upon such claims....
 *Id.* at 2.

be considered final, the Court concludes that the Committee has failed to demonstrate that the standards for finality articulated by the Second Circuit have been satisfied. While the Committee is correct in its contention that the Second Circuit has adopted a flexible approach to finality in the bankruptcy context, *see In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir.1989); *In re Ionosphere Clubs, Inc.*, 139 B.R. 772, 777 (S.D.N.Y.1992) ("Because bankruptcy proceedings often continue for long periods of time, and discrete claims within those proceedings are frequently resolved prior to the conclusion of the entire bankruptcy, the concept of finality in bankruptcy matters is more flexible than in ordinary civil litigation."), a bankruptcy order is nonetheless interlocutory unless it "completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Pegasus Agency, Inc.*, 101 F.3d 882, 885 (2d Cir.1996) (quoting *In re Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir.1995)). The resolution of a dispute in the bankruptcy context "does not simply refer to the determination of a separable issue. Rather, a 'dispute' in this context means at least an entire claim for which relief may be granted." *Flor v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 283 (2d Cir.1996).

The Court agrees with the Committee that the Bankruptcy Court has not manifested any intention to revisit the Preliminary Injunction itself unless it appears that Quigley's reorganization efforts are not succeeding. Nonetheless, the Court concludes that the Preliminary Injunction is interlocutory because it does not conclusively determine whether any individual action against Pfizer should be stayed for the duration of Quigley's insolvency proceeding. The language of the injunction states that "all objections to the relief sought by the Motion and in the Complaint, are overruled on their merits," Pre-

liminary Injunction at 5, and further declares that the injunction is intended to remain in effect "during the pendency of Quigley's Chapter 11 case," *id.* at 6. Nothing in the injunction itself indicates that the Bankruptcy Court intends to reexamine the existence of the Preliminary Injunction in the future. The Bankruptcy Court did indicate on the record that "when it becomes obvious that nothing's happening, then I will consider modifying or eliminating [the preliminary injunction], or, at some point, somebody will put a proposal before me and people will object to it or not...." (Memorandum of Quigley Company and Pfizer Inc. Opposing Motions of Ad Hoc Tort Victims' Committee and Reaud, Morgan & Quinn, L.L.P. for Leave to Appeal under 28 U.S.C. § 158(a)(3), dated Jan. 6, 2005 ("Quigley Mem.") at 4 (quoting Nov. 17 Hr'g Tr. at 41).) But under *In re Lomas*, 932 F.2d 147 (2d Cir.1991), an injunction extending an automatic stay to third parties is not rendered non-final merely because a bankruptcy court indicates that it may revisit the injunction in light of the bankrupt's reorganization prospects. *See id.* at 152 (concluding that an injunction that "might be examined in light of the prospects for reorganization" may nonetheless be considered final).

The Preliminary Injunction, however, differs from the potentially final injunctions at issue in *Lomas* and related cases in one critical respect: under its terms, it does not "completely resolve[ ] all of the issues pertaining to" the discrete claims of the potentially 160,000 lawsuits affected by the injunction and/or the automatic stay of suits against Quigley. *Pegasus Agency*, 101 F.3d at 885. The injunction instead explicitly lays out a process by which individual claimants may seek relief from the stay on the grounds that their claims are not Quigley-related or that they are enti-

tled to relief under Section 362 of the Bankruptcy Code, which enumerates circumstances in which a party burdened by the automatic stay can seek relief from it.[3] *See, e.g.,* 11 U.S.C. § 362(d)(1) (directing a bankruptcy court to grant relief from the automatic stay after a hearing "for cause, including the lack of adequate protection of an interest in property of such party in interest"); *id.* § 362(e) (providing for termination of the automatic stay after thirty days following filing of a motion for relief under Section 362(d) unless the bankruptcy court orders otherwise); *id.* § 362(f) (authorizing relief from the automatic stay without a hearing if such relief "is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of [Section 362]"). In no other case cited by the Committee did a bankruptcy court allow litigants to seek analogous individualized relief after the injunctive order was issued. *See, e.g., Lomas,* 932 F.2d at 147 (reviewing an order determining that a single suit

against directors of the bankrupt corporation should be stayed); *Ionosphere,* 139 B.R. at 772 (treating as final an order authorizing changes to a collective bargaining agreement).[4]

▪ The Preliminary Injunction, though issued by the Bankruptcy Court after notice and a hearing rather than by operation of law, is thus indistinguishable in its effect on litigants from the automatic stay imposed under Section 362. The Second Circuit has made clear that the automatic stay is appealable only when a party subject to the stay seeks relief from it in bankruptcy court and the court issues a final order granting or denying the motion for relief. *See Pegasus Agency,* 101 F.3d at 885; *In re Chateaugay Corp.,* 880 F.2d 1509, 1511–12 (2d Cir.1989) ("Congress manifestly intended to treat final denial of relief from the automatic stay as a final order."). If the Preliminary Injunction is to be treated as analogous to the initial imposition of the automatic stay, as the Bankruptcy Court intended, then it would be inappropriate for this Court to deter-

**3.** The Bankruptcy Court found authority to impose the Preliminary Injunction under Sections 105 and 362 of the Bankruptcy Code, and the injunction itself mentions that it does not "prohibit any party in interest from seeking relief from the automatic stay of section 362(a) ... or the terms of this order." Preliminary Injunction at 7. Because the order itself relies on Section 362 as a source of authority to extend the automatic stay to Pfizer, and because Section 362 contains clear standards governing motions for relief from a bankruptcy-related automatic stay, *see* 11 U.S.C. § 362(d)—(f), the Court assumes that any motion for relief made pursuant to this provision of the injunction, including relief from the stay of suits against Pfizer, will be governed according to the standards articulated by Section 362(d)—(f) and the voluminous caselaw interpreting those provisions. Because the record does not reveal that any party has yet sought relief from the injunction pursuant to this provision, however, this Court has no occasion to evaluate the Bank-

ruptcy Court's standards for evaluating such motions.

**4.** In *A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), an appellate court asserted jurisdiction over, and affirmed, a preliminary injunction similar to the one now before the Court. That injunction stayed potentially several thousand suits against third-parties related to products manufactured by a bankrupt corporation, but provided for individualized relief from the stay. *See id.* at 1008–09. *A.H. Robins* apparently did not raise the difficult jurisdictional issues presented here, however, because the order being appealed from in that case was rendered by the district judge "who had jurisdiction over the proceedings," *id.* at 997, rather than by a bankruptcy court. *See* 28 U.S.C. § 1292(a)(1) (granting courts of appeals jurisdiction to hear appeals of preliminary injunctions entered by district courts).

mine that the injunction itself is appealable where no party has yet sought the individualized relief that is explicitly provided for under its terms. *See In re Chateaugay Corp.,* 64 B.R. 990, 997 (S.D.N.Y.1986) (concluding that a bankruptcy court's order was non-final where it "clearly expressed its intent to resolve any factual or legal disputes arising from its Order in a hearing immediately upon the [parties'] request"). If parties do seek this relief from the Bankruptcy Court, any final grant or denial of relief will be appealable.[5]

## B. *LEAVE TO APPEAL SHOULD NOT BE GRANTED*

### 1. *Standard of Review*

As an interlocutory order, the Preliminary Injunction will only be reviewed on its merits if the Court grants the Committee leave to appeal the order. *See* 28 U.S.C. § 158(a)(3) (granting district courts jurisdiction to hear appeals from interlocutory orders issued by a bankruptcy court "with leave of the court"). As Quigley points out (*see* Quigley Mem. at 5), neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure provide standards for district courts to follow in determining whether to grant leave to appeal an interlocutory order of the type under review in this case. The Committee argues that the standards articulated by 28 U.S.C. § 1292(a)(1) should, by analogy, govern the Court's analysis of whether to grant leave to appeal. That provision grants courts of appeals jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States … granting, continuing, modifying, refusing or dissolving injunctions." Quigley instead counters that the provisions of 28 U.S.C.

§ 1292(b) govern this matter. That section authorizes a district court to certify an interlocutory order for appeal when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

■ Although the Committee's argument has superficial appeal, the plain language of Section 158(a)(3), as well as related Second Circuit caselaw, compel the conclusion that this Court cannot grant leave to appeal unless the Committee can satisfy the conditions established by Section 1292(b). While the language of Section 1292 indicates that orders such as preliminary injunctions should be treated differently from other interlocutory orders for purposes of analyzing appealability, that statute does not govern the Court's analysis in this case. Rather, Section 158(a) determines the conditions under which an order of the bankruptcy court is appealable as of right. That statutory provision divides bankruptcy court orders into only two types: final orders and "interlocutory orders and decrees issued under section 1121(d) of title 11," which are appealable to the district court as of right pursuant to Sections 158(a)(1)—(2), and "other interlocutory orders and decrees," including preliminary injunctions, which are only appealable "with leave of the court" pursuant to Section 158(a)(3). It would make little sense for the bankruptcy appeal statute to group preliminary injunctions with other interlocutory orders but intend for "leave to appeal" these injunctions to be granted as of right simply because Section 1292 treats interlocutory

---

**5.** If any appeal of a final order denying relief from the Preliminary Injunction is pursued, nothing would prohibit an appellant from challenging the validity of the Preliminary Injunction itself, as well as any denial of discretionary relief from the injunction, during that appeal.

injunctions differently from other interlocutory orders.

As courts in this Circuit have invariably held, all appeals governed by Section 158(a)(3), including appeals of preliminary injunctions, should refer to the standards articulated by Section 1292(b) to determine whether leave to appeal should be granted. *In re Kassover*, 343 F.3d 91 (2d Cir.2003), reflects this view. The district court in that case applied the Section 1292(b) standard to an appeal of a preliminary injunction issued by a bankruptcy court and found that standard was not satisfied by the appellants. It consequently denied the appellants leave to appeal. *See In re Kassover*, No. 01 Civ. 11769, 2002 WL 100640, at *1 (S.D.N.Y. Jan.24, 2002). The Second Circuit found that, despite the language of Section 1292(a)(1) granting courts of appeal jurisdiction over orders entering preliminary injunctions, the district court itself lacked "statutory obligations to entertain the merits posed by the claims for relief" from the preliminary injunction. *Kassover*, 343 F.3d at 95. According to the Second Circuit, the district court, in applying Section 1292(b) to its determination of whether to grant leave to appeal, "lawfully declined to hear the merits" of the appeal. *Id.* Numerous other decisions by district courts have confirmed that Section 1292(b) should supply the standards for district courts to consider when assessing whether leave to appeal should be granted under Section 158(a)(3). *See, e.g., In re Enron Corp.*, 316 B.R. 767, 771 (S.D.N.Y.2004) (applying Section 1292(b) standard to determine whether leave to appeal preliminary injunction entered pursuant to Sections 105 and 362 of the Bankruptcy Code should be granted); *In re Chateaugay Corp.*, 213 B.R. 633, 636 (S.D.N.Y.1997); *In re MacInnis*, 235 B.R. 255, 263 (S.D.N.Y.1998).

2. *Application of Section 1292(b) Standards*

Leave to appeal the Preliminary Injunction should be granted only if the order "(1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Enron*, 316 B.R. at 771–72.

 The Court finds that there is no controlling question of law in this case as to which there is a substantial ground for difference of opinion. The Committee accurately states that the legal standards governing entry of a preliminary injunction extending the automatic stay to third parties are not entirely settled in this Circuit. *See, e.g., In re United Health Care Org.*, 210 B.R. 228, 232 (S.D.N.Y.1997) (noting that the Second Circuit has not yet defined "under what circumstances, if any, a bankruptcy court may properly exercise § 105 jurisdiction to issue a stay with respect to non-bankrupt co-defendants") (quoting *Teachers Ins. and Annuity Association of America v. Butler*, 803 F.2d 61, 65 (2d Cir.1986)).

On the other hand, it is also clear that the Bankruptcy Court was not acting contrary to law when it issued the Preliminary Injunction. As Quigley notes, a number of bankruptcy and district courts have declined to hold that the traditional grounds for equitable relief must be satisfied for the automatic stay to be extended. (*See* Quigley Mem. at 6–7) (collecting cases). Moreover, the Preliminary Injunction makes many of the findings that would traditionally apply to a motion for injunctive relief: the injunction itself states that Quigley's estate, and its ability to "successfully reorganize under chapter 11 of the Bankruptcy Code," would be irreparably harmed if the injunction were not issued, and that the entry of the injunction was in

the best interests of "Quigley, its estate, creditors and parties in interest." Preliminary Injunction at 4. The Bankruptcy Court also indicated on the record that it was issuing the order because "the injunction furthers the process of allowing the parties to reach accommodations with respect to a plan of reorganization." (Quigley Mem. at 8 (quoting Nov. 17 Hr'g Tr. at 12).) It implicitly concluded that it believed that Quigley could successfully reorganize when it determined that it would revisit the Preliminary Injunction if Quigley ceased making progress towards a successful reorganization.

Ample evidence on the record supports these conclusions. Because it is doubtful that the outcome of the Bankruptcy Court's analysis would have been any different even if it had chosen to review Quigley's motion for injunctive relief under a different legal standard, any legal question raised by the Bankruptcy Court's standard of review cannot be considered "controlling." *See In re Jackson Brook Institute, Inc.*, 280 B.R. 1, 5 (D.Me.2002) ("If the parties could be successful on alternative grounds or asserted theories, the question asserted may not be controlling.").

The Committee also argues that the Bankruptcy Court improperly used its powers under Section 105(a) to expand the scope of Section 524(g) of the Bankruptcy Code. (*See* The Ad Hoc Committee of Tort Victims' Memorandum in Support of Motion for Leave to Appeal December 17, 2004 Order ("Committee Mem.") at 20–22.) That statutory provision authorizes what is known as a "channeling injunction" directing those holding pre-petition claims to bring claims against a trust established by the debtor, rather than the against the debtor itself. It has been used by other companies faced with a large number of asbestos-related claims to obtain a "fresh

start" and remain in business as going concerns by removing uncertainty associated with pending asbestos claims. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 234 (3rd Cir.2004) (describing Section 524(g) and its use by defendants facing large numbers of asbestos-related claims). According to the Committee, the Preliminary Injunction directly conflicts with the Third Circuit's holding in *Combustion Engineering* that Section 105(a) does not authorize a bankruptcy court to achieve results inconsistent with Section 524(g). *See id.* at 236–37.

The Court does not reach the merits of the Committee's argument because it concludes that the decision in *Combustion Engineering* does not create substantial ground for difference of opinion concerning the decision of the Bankruptcy Court in this case. In *Combustion Engineering*, the Third Circuit was reviewing a final injunction entered by the bankruptcy court that was intended to channel claims against third parties even after the debtor's reorganization was complete. *See id.* at 201–02. This case involves only a preliminary injunction staying, rather than channeling, claims that is intended to provide Quigley with the time and certainty regarding available resources that is necessary for it to achieve a successful reorganization. There is no indication in the present record that the Bankruptcy Court intends to make the injunction last any longer than necessary to facilitate Quigley's reorganization. There is thus no cause for concluding that *Combustion Engineering* creates a conflict with the Bankruptcy Court's decision in this case.

Nor does the Court conclude that allowing an appeal at this juncture would materially advance termination of Quigley's Chapter 11 proceedings. Allowing the Preliminary Injunction to remain in place while the Bankruptcy Court considers any

motions for relief that may be made pursuant to the terms of the injunction would enable the Bankruptcy Court to develop facts that would facilitate consideration of any appeal, and would allow the management of Quigley's bankruptcy case to continue smoothly in the interim.

### III. *CONCLUSION*

Consequently, for the reasons stated above, it is hereby

**ORDERED** that the Ad–Hoc Committee of Tort Victims' Motion for Leave to Appeal the Bankruptcy Court's December 17, 2004 Order in adversary proceeding No. 04–04262 is denied.

The Clerk of Court is directed to close this motion, and to decline to docket the Ad–Hoc Committee's Notice of Appeal of the December 17, 2004 Order.

**SO ORDERED.**